**In re CHAS. A. STEVENS & CO., Debtor.**

**Bankruptcy No. 88 B 09575.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 29, 1989.

Donald F. Engel, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for creditors' committee.

Salvatore A. Barbatano, Rudnick & Wolfe, Chicago, Ill., for debtor Chas. A. Stevens & Co.

Pete Ball, Thomas O'Donoghue, Chicago, Ill., Representative of Buccino & Associates.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

Reductions of professional fees are among a bankruptcy's judge's most diffi-, cult and sensitive tasks. The controlling statutory and case authorities invest bankruptcy judges with broad discretion which must be equitably and fairly exercised without abuse to award appropriate compensation. Unfortunately for the applicant at bar, exercise of such discretion under

the facts and history of this case mandates substantial disallowance of the fees requested and some of the expenses for which reimbursement is sought.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this application pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O). Hearings were held after proper notice was given to creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002.

## II. SUMMARY OF THE APPLICATION, RESPONSES AND OBJECTIONS

This matter comes before the Court on the second application of Buccino and Associates ("Buccino") pursuant to 11 U.S.C. §§ 330 and 331 and Federal Rule of Bankruptcy Procedure 2016 for the allowance of $322,181.25 in interim compensation and reimbursement of expenses in the amount of $14,712.67 from the period July 31, 1988 through November 12, 1988. A response to the application was filed by American National Bank & Trust Company (the "Bank"). The Bank holds an unpaid claim secured by valid perfected pre-petition and post-petition liens and security interests on most of the estate's property and has been afforded priority status under 11 U.S.C. § 364(c). It therefore objects to payment of Buccino's claim, as allowed, until its priority claim is fully satisfied. Additional objections were filed by Rubloff, Inc. and the Official Creditors' Committee of Unsecured Creditors (the "Committee"). Those objections principally contend that the compensation sought is excessive. The Committee asserts that $250,000.00 should be the appropriate allowance, although it fails to state how it arrived at this particular figure. For the reasons set forth herein, the Court hereby awards Buccino $192,-500.00 in compensation and $13,732.60 for reimbursement of expenses, for a total award of $206,232.60.

## III. FACTS AND BACKGROUND OF THE CASE

Chas. A. Stevens & Co. (the "Debtor") voluntarily filed a Chapter 11 petition on June 21, 1988. For over a century prepetition, the Debtor was engaged in retail sales of women's apparel and accessories. It operated approximately twenty-nine stores predominantly in the metropolitan Chicago area. The Debtor's original plan of reorganization was filed on October 20, 1988. That plan contemplated a reorganization of the company as an ongoing business at most of its stores. Subsequently, on November 14, 1988, the Debtor filed its Amended Plan of Reorganization which also contemplated an ongoing business on a reduced scale due to declining prospects and continuing financial problems. Prospects declined further and the Debtor sought a "white knight" to purchase its assets. Notwithstanding the Debtor's efforts, no sale materialized.

Consequently, a Second Amended Plan was filed on January 31, 1989. This plan, jointly proposed by the Debtor and the Committee, called for the Debtor to conduct going out-of-business sales at its remaining stores. Problems with this proposed plan prompted the filing of a Third Amended Plan of Reorganization. Same was also jointly submitted by the Debtor and the Committee. Shortly thereafter, objections were filed. To meet such objections and thereby propose a facially confirmable liquidating plan, the Debtor and the Committee filed the Fourth Amended Plan of Reorganization on June 1, 1989. The accompanying disclosure statement was found adequate for purposes of 11 U.S.C. § 1125. After return and tally of the ballots, the Debtor's Fourth Amended Plan was accepted. All objections to confirmation were resolved by agreement of the parties. On July 10, 1989, after technical non-substantive final amendments were made to comply with 11 U.S.C. § 1129, the plan was confirmed. The confirmed plan contemplates a liquidation and marshalling of the Debtor's remaining assets and payment thereof in accordance with the priori-

ties set forth under the Bankruptcy Code (the "Code").

## IV. BUCCINO'S EMPLOYMENT

Buccino is a management consulting firm with extensive bankruptcy experience and a professed high level of fiscal expertise. It specializes in the turnaround of financially troubled companies and has frequently been engaged to provide its services to many debtors. On May 16, 1988, prior to the filing of the case, Buccino was engaged by the Debtor to analyze its financial difficulties and develop and implement a plan to rectify its distressed operations. Specifically, the review was to include the analysis of store-by-store operations, projection of working capital requirements and review of overhead expenses. On June 20, 1988, the day before this case was filed, the Debtor signed an employment agreement with Buccino which provides in pertinent part:

> to implement a strategic plan in an effort to turnaround Chas. A. Stevens. Scope to include a review of *all store operating expenses*, corporate overheads, selling, general and administrative expenses, and all cash out items. Efforts to include an *analysis of all store operations* on a cash basis and an analysis of all asset redeployment opportunities in an effort to improve Chas. A. Steven's cash flow. Buccino further to assist in liaison with unsecured creditors, if required, and present lenders, including current factors, as well as prospective lenders and factors, and to assist in refinancing, if required.
>
> The Company is contemplating a Chapter 11 filing. Services would be expanded to include preparation of all necessary reports required to be filed with the Courts and the office of the Trustee. Buccino would also prepare financial data required for creditors committee counsel, would consult with debtor and debtor [sic] counsel regarding plan of reorganization, business plan and disclosure statement. (Emphasis added).

The agreement provided for payment of a $50,000.00 retainer and contains hourly compensation rates ranging from $75.00 to $250.00. Buccino's employment was unanimously supported by all parties in interest and hence authorized by the Court on June 28, 1988. Thereafter, on July 20, 1988, the Court authorized payment of the retainer. All compensation was subject to further order of Court.

The application at bar is the second fee request submitted by Buccino. Although the application seeks interim compensation, a representative from Buccino stated at the final hearing on August 28, 1989, that it would not request additional payment. In its first fee application, interim compensation in the amount of $148,373.75 and reimbursement of expenses in the amount of $6,909.00 was sought for the period June 21, 1988 through July 30, 1988. No objections were filed to that application. All interested parties who appeared at that hearing strongly supported full allowance of the request in marked contrast to the objections lodged against the instant application. Pursuant to the first fee application, the Court awarded compensation in the amount of $144,573.75 and authorized reimbursement of expenses in the amount of $6,427.27.

## V. DISCUSSION

### A. COMPENSATION STANDARDS

■ Pursuant to Section 330 of the Code, professionals applying for fees must demonstrate that their services were actual, necessary and reasonable. The legislative history of section 330 expressly notes the Court's correlative duty to closely examine the reasonableness and necessity of the fees incurred. Federal Rule of Bankruptcy Procedure 2016 in turn requires that, "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a).

Unfortunately, the only statutory cap setting maximum fees regards bankruptcy

trustee fees as provided in section 326. Section 328, however, provides a potential check on the compensation of professionals. Section 328(a) states:

The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. *Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.* (Emphasis added).

11 U.S.C. § 328(a).

■ Even though private compensation agreements are permissible under the Code, the Court retains the responsibility of ensuring that the compensation awarded to professional persons falls within the parameters prescribed by section 330. *See In re Churchfield Management & Invest. Corp.*, 98 B.R. 893 (Bankr.N.D.Ill.1989). The burden of proof to show entitlement to the fees requested is on the applicant. *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill. 1985). Moreover, fee applications must stand or fall on their own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill. 1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees. *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 734–735 (Bankr.N.D.Ill.1988); *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986).

■ Several courts have denied or drastically reduced compensation in unsuccessful Chapter 11 cases. *See In re King*, 96 B.R. 206, 208 (W.D.Mo.1989) (district court affirmed bankruptcy court's order to return all fees rather than reduce the amount awarded); *In re Coastal Equities, Inc.*, 39 B.R. 304, 311 (Bankr.S.D.Cal.1984) (reduction of fees by 17.5% for work performed in connection with a plan of reorganization without benefit to the estate). *In re Coastal Equities, Inc.* also sets forth the proposition that attorneys should receive less for their efforts when a plan of reorganization is not fully implemented or which fails. *Id.* at 311. Although a liquidating plan was confirmed in the instant case, these authorities provide instructive dicta to the situation at bar. The attempted reorganization of the Debtor as an ongoing business failed. Thus, Buccino's request for fees must be considered with this fact in mind. The cited cases provide clear authority supporting reduction of fees where work actually performed did not benefit the estate in connection with the failed reorganization efforts.

■ Professionals may be compensated out of the funds of the bankruptcy estate only if the work benefitted the estate. *In re Ryan*, 82 B.R. 929, 932 (N.D.Ill.1987); *see also In re Rhoten*, 44 B.R. 741, 743 (Bankr.M.D.Tenn.1984). In *Ryan*, Judge Grady declined to award an attorney compensation for time expended defending the debtor against dischargeability complaints. The court found that the services performed benefitted a debtor personally and not the estate. *Ryan* notes a general principle applicable in this case. Not all services rendered to the debtor by professionals benefit the estate. Hence, services that provide no benefit to the estate should not be compensable from estate property. Moreover, Judge Grady reviewed the legislative history of section 330. *Ryan* at 932–933. He concluded that the Code mediates between the interests of debtors and creditors in terms of allowable fees paid from the estate for services rendered on behalf of the debtor.

■ Unless services performed produce a demonstrable benefit to the estate, the Court will not award compensation. Billa-

ble hours are not necessarily compensable hours. An increasing attitude in the bankruptcy community is that if the time is actually expended, the applicant is entitled to receive all fees requested. All professionals must be disabused of this fallacious notion. The regular hourly rates charged for Buccino employees are set by the firm at a high level to reflect its cost of doing business as well as to provide a level of compensation commensurate with its high degree of expertise and financial acumen. The corollary of this proposition is that the professionals will be held to a high level of efficiency and results obtained in order to justify award of such fees. Accordingly, the corollary principle of prudent expenditure of services rendered applies notwithstanding the clear Congressional intent departing from notions of economy of the estate regarding fees. The Code contemplates comparable compensation for services provided by professionals in bankruptcy . as they can obtain from clients not seeking bankruptcy relief. 124 Cong.Rec. H 11091–92 (daily ed. Sept. 28, 1978); S 17408 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), the Fifth Circuit set forth twelve factors to be considered in awarding adequate compensation.[1] These factors are based on the standards for fees for legal services as set forth in the Model Code of Professional Responsibility, DR 2–106. *Pettibone*, 74 B.R. at 305–306.

■ The Court has considered all of the *Johnson* factors, but has found many to be irrelevant. Such factors as whether employment precludes acceptance of other opportunities and the unattractiveness of the

case are of little value in determining compensation to be awarded Buccino. Other factors, on the other hand, such as the time and labor required, the skill required, the customary fee and the degree of success are highly relevant and have been considered. Fees are determined by reference to the above-specified quantitative and qualitative factors. Hence, the Code balances several conflicting interests: to reward professionals and encourage them to practice in the area of bankruptcy; to fully disclose the underlying reasons for fee awards; and to encourage cost-conscious administration of cases. These interests must all be considered when a bankruptcy judge is determining properly compensable fees and reimbursement of expenses. The exercise of the Court's discretion is difficult because the fee award determination is inherently subjective given the statutory standards. The line between reasonable and necessary fees and unreasonable or unnecessary fees is not clearly drawn by the Code. Nevertheless, wherever the line is placed in this case, it has clearly been crossed by Buccino.

■ The Court is willing to award fees for diligence, experience, skill and results. The result obtained is a major factor in awarding professional fees. The main goal of Chapter 11 apart from a successful reorganization of a debtor is a maximum distribution to the creditors of the estate. Ultimately, that is the benchmark against which success or failure must be judged. More often than not, a debtor is experiencing serious financial difficulty, if not near a point of total collapse. The bankruptcy estate is distinct from all other nonbankruptcy clients. It is not principally to serve as a fund for payment of professional fees.

1. These twelve factors are as follows:
 (1) the time and labor required;
 (2) the difficulty and novelty of issues involved;
 (3) the skill required to properly perform the services;
 (4) whether employment in the case precluded acceptance of other employment opportunities;
 (5) the customary fee for the services;
 (6) the time constraints imposed by the trustee or the circumstances of the case;
 (7) whether the fee is contingent;
 (8) the amounts involved and the degree of success;
 (9) the experience, reputation and ability of the professional;
 (10) the unattractiveness of the case;
 (11) the nature and length of the relationship between the professional and the trustee; and
 (12) the amount of compensation allowed similar professionals in similar careers. *Id.* at 717–719.

It is finite, rarely expands over time, possesses limited cash and usually has diminishing prospects despite high expectations. The estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought.

## B. BUCCINO'S COMPENSATION REQUEST

The parties do not contend that Buccino's services were not actually rendered. Rather, the thrust of the objections is that some of the services were unnecessary; the compensation sought is unreasonably high given Buccino's projection of the cost of its services; and not all of the work performed was of such benefit to the estate to warrant full allowance. With these principles, authorities and objections in mind, the Court is unable to ascertain a demonstrable benefit to the estate equal to the full amount of compensation sought. The fee application at bar divides the services performed into twelve categories.[2]

One of the categories of major concern to the Court as well as the objecting creditors is the Financial Projections/Cost Analysis category. Some 687 hours were expended in this category alone for which fees are requested in the amount of $81,053.75. The thrust of the objections pertaining to this category assert that in light of the ultimate decision by the Debtor to liquidate its assets, it appears that the cash flow projections and other forecasts for alternate reorganization plans, not contemplating the going out-of-business by the Debtor, were of little value to the estate in the final analysis.

Buccino projected estimated fees and expenses to the Debtor and the Committee for the periods covered by both the first and second applications. From the application (page 29) it is clear that Buccino stayed very near its own projections for the period from July 31, 1988, through September 3, 1988. From September 4, 1988, through November 12, 1988, it had forecast $85,000.00 for its fees and expenses. Instead, the actual charges for that period totalled $253,415.69. The Court is deeply troubled by the significant fact that Buccino greatly exceeded its own projected budget for fees plus expenses for the full period from August 6, 1988 through November 12, 1988. In light of the end results of the plan confirmed, much of the work performed in September through November 1988 relative to the first and second plans was of little benefit to the estate. Buccino's projection for the full period was $175,000.00. In fact, fees alone were underestimated by $147,181.25. Buccino has sought compensation and reimbursement of expenses in its first and second applications totalling $492,176.67. Thus, for a period of less than five months, Buccino has requested aggregate compensation of almost one-half million dollars for providing financial consulting and management services.

 At the point in time that it became apparent that the Debtor's chances of a successful on-going reorganization were slim to none, Buccino in its expertise, should have at least alerted the Committee that the time it was expending was substantially over budget. The Court seriously questions the propriety of expending such an immense amount of time during

2. The following is a list of those categories and the time expended in each:

| Category | Time Expended |
| --- | --- |
| Chapter 11 Filing and Reports | 69.50 hours |
| Financing Issues | 71.75 hours |
| Executory Contract Review and Negotiation | 39.25 hours |
| Excessive Inventory Liquidation | 54.25 hours |
| Leasehold Valuation and Sale | 95.25 hours |
| Financial Projections/Cost Containment Analysis | 687.00 hours |
| Store Operations/Gross Margin Analysis | 133.50 hours |
| Sale/Merger Issues | 34.75 hours |
| Plan of Reorganization/Confirmation | 292.75 hours |
| General Corporate Matters | 520.50 hours |
| General Creditor Issues | 90.50 hours |
| Fee Application | 149.50 hours |
| **TOTAL TIME EXPENDED** | 2,238.50 hours |

the period of mid-September through mid-November without advising any of the parties other than the Debtor of the massive increase. As it is the unsecured creditors whose dividends will be ultimately reduced. when professional fee applications are allowed in amounts much higher than originally estimated, the Court concludes that Buccino had an obligation to inform the Committee, if not the Court, of the substantially greater amounts of time being expended from that previously projected.

Moreover, due to the level of its financial expertise, insider relationship with the Debtor and access to all Debtor's financial books and records, Buccino should have known that much of the additional time spent attempting to internally reorganize a failing Debtor, was for all practical purposes, an exercise in futility. It was uniquely positioned to be acutely aware that the return to the unsecured creditors after the payment of professional fees and other prior expenses would be diminutive (estimated at approximately 5%). As an expert in assisting troubled debtors, Buccino knew full well when it was expending the additional time that the creditors would be effectively paying the bill for its services, not the Debtor or its equity shareholders.

■ After extensively researching the case law regarding professional fee applications, the Court was unable to find any dispositive cases dealing with the issue of appropriate fee allowance in cases where the financial consultant's request greatly exceeds its own projections. Although the Court will not enslave professionals to the exact amount of their projected budgets, such forecasts must be given substantial weight when reviewing fee requests. The Court is required by sections 328, 329, 330 and 331 to carefully scrutinize all work performed by professionals in order to ascertain its benefit to the estate. The Court holds that when professionals, especially financial experts, project estimated fees or budgets to a client, they should expect to be held to same or some reasonable variation thereof. For Buccino to apply to this Court after such enormous over-runs and expect payment in full is unrealistic and unreasonable. Hindsight may be 20/20 but reasonable foresight and prudent financial planning should have compelled Buccino to timely advise the Committee that its projected fees were nearly doubling.

At the last hearing on the application on August 28, 1989, a representative of Buccino indicated that in large part, the additional fees were incurred as a result of undertaking the task of analyzing the profitability of the Debtor on a store-by-store basis rather than all stores together as the Debtor's original reorganization strategy contemplated. The employment agreement clearly states, however, that "[e]fforts to include an analysis of *all* store operations on a cash basis...." Moreover, Buccino held itself out to be an expert in reorganizing troubled debtors. Therefore, it should have anticipated expending time involving both a store-by-store financial analysis of the Debtor as well as an analysis of all stores operated by the Debtor.

A further explanation offered for the additional fees was due to a post-petition change in the Debtor's management. The application notes that in mid-September John Edmondson resigned as president and chief executive officer and was replaced by John Lee. Lee implemented a change in strategy by reducing the number of stores and concentrating only on those stores that maintained strong sales and cash flows. The Court does not comprehend how such a change in strategy would justify all of the additional time expended. Buccino's expertise should have enabled it with some degree of accuracy to estimate the necessary amount of hours to be spent implementing this new strategy.

As additional reasons, Buccino represents that much more time was expended than anticipated helping the Debtor's staff reconcile payments made and merchandise received when problems with the Debtor's suppliers arose; assisting the Debtor to obtain new in-house financial experts and educating them; negotiating and advising regarding the Debtor's line of credit with the Bank, other factors and credit sources

and the prospective purchasers. All these points are undisputed as is the salient fact that Buccino waited until after all the additional time was expended before alerting any party aside from the Debtor of the additional expenditures of time and effort. The Court is not persuaded by these explanations.

█ The amount of fees based on Buccino's projection is an objective guideline to follow for fee allowance determination. As projected fees were approximately $147,000.00 less than the amount sought, the Court will only allow the amount originally projected ($175,000.00) plus ten percent ($17,500.00) which the Court concludes is a reasonable variance above the amount projected for a total of $192,500.00. Allowing a higher deviation would effectively render projections virtually meaningless. The Debtor's problems with its inventory suppliers and related need for new factoring and additional short-term credit probably could not have been reasonably anticipated. The other reasons, however, were foreseeable problems Buccino should have anticipated.

## C. REIMBURSEMENT OF EXPENSES

Normally, the Court does not authorize reimbursement for travel, hotel charges, or meals. However, due to the fact that only an out-of-state manager was available, the Court authorized that manager's travel expenses. The Court imposed caps on several expenses among which were hotel charges of $100.00 per day and meal expenses of $50.00 per day. Moreover, the Court cautioned all professionals that the guidelines setting forth the maximum levels of expenditures for food and lodging were not to be read as an invitation to incur expenses to the limit.

█ The Court finds that several of the meal expense entries were unnecessarily incurred. Pursuant to *In re Continental Illinois Securities Litigation*, 572 F.Supp. 931, 934 (N.D.Ill.1983), the Court need only reimburse those reasonable expenses of *necessary* travel, hotel accommodations, and meals. The Court will not reimburse local breakfast, lunch and dinner expenses for individuals which were charged along with the out-of-state manager. Buccino has failed to demonstrate how these expenses are reasonably necessary for its financial consulting for the Debtor. The Court subscribes to the view that meals are personal expenses and thus normally not properly chargeable to the estate. *See In re Island Helicopter Corp.*, 53 B.R. 71, 73 (Bankr.E.D.N.Y.1985).

Accordingly, certain meal expenses will not be allowed as there has been no showing of any compelling necessity for reimbursement of such expenses.[3] In addition,

3.

| Date | Individual | Description | Disallowance |
|---|---|---|---|
| 07/12/88 | JGB | Lunch with McMahon | $24.48 |
| 08/15/88 | JGB | Lunch with Edmondson | $14.43 |
| 08/23/88 | JGB | Dinner with O'Donoghue | $25.35 |
| 08/23/88 | JGB | Lunch with Edmondson and O'Donoghue | $ 9.51 |
| 08/29/88 | GPB | Lunch with McMahon | $32.83 |
| 09/07/88 | JGB | Dinner | $23.04 |
| 09/07/88 | GPB | Dinner with I. Ginsberg | $51.90 |
| 09/14/88 | JGB | Dinner with O'Donoghue | $17.50 |
| 09/22/88 | JGB | Dinner with Barbatano and Hanson | $48.58 |
| 09/26/88 | AXC | Dinner—worked late | $14.56 |
| 09/28/88 | JGB | Dinner with AXC, DML and TSO | $61.95 |
| 09/29/88 | AXC | Dinner with DML, TSO, and G. Suarez | $51.65 |
| 10/04/88 | DML | Dinner—worked late | $19.43 |
| 10/05/88 | AXC | Dinner—worked late | $ 5.08 |
| 10/05/88 | JGB | Dinner with O'Donoghue | $20.74 |

certain miscellaneous expense entries will not be allowed as they do not adequately demonstrate that same were actual and necessary expenses of the estate.[4]

## VI. CONCLUSION

For the foregoing reasons, the Court hereby awards Buccino & Associates compensation on its second and final application in the amount of $192,500.00 and is authorized to be reimbursed for expenses in the amount of $13,732.60 for a total award of $206,232.60.

Payment of the balance of these allowed fees and expenses is further ordered to be withheld and deferred until such time as the priority claims, both pre-petition and post-petition, of American National Bank & Trust Company, as allowed by the Court, have been paid in full.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

See written Order.

| Date | Individual | Description | Disallowance |
|------|-----------|-------------|--------------|
| 10/06/88 | JGB | Dinner with Canaveral | $14.65 |
| 10/11/88 | JGB | Dinner with DML, AXC, and TSO | $44.07 |
| 10/12/88 | DML | Dinner | $ 8.21 |
| 10/12/88 | JGB | Dinner with McMahon | $34.80 |
| 10/13/88 | JGB | Dinner with DML, AXC and TSO | $46.02 |
| 10/15/88 | JGB | Lunch with DML, AXC and TSO | $33.00 |
| 10/15/88 | JGB | Dinner with TSO, JGB, AXC and DML | $42.96 |
| 10/16/88 | JGB | Dinner with DML and AXC | $41.00 |
| 10/17/88 | TSO | Dinner with DML and AXC | $41.18 |
| 10/18/88 | DML | Dinner with AXC | $18.88 |
| 10/19/88 | JGB | Dinner with DML, ACX and TSO | $37.11 |
| 10/19/88 | TSO | Breakfast with AXC and JGB | $23.85 |
| 10/20/88 | JGB | Lunch with TSO and Mike Host | $40.66 |
| 10/21/88 | JGB | Dinner with TSO | $19.47 |
| 11/01/88 | JGB | Lunch with O'Donoghue | $ 9.51 |
| 11/01/88 | JGB | Dinner with M. Host | $29.00 |
| 11/05/88 | JGB | Dinner with J. Lee | $19.59 |
| 11/10/88 | JGB | Lunch with O'Donoghue | $ 7.50 |
| 11/11/88 | JGB | Lunch with Host and O'Donoghue | $26.58 |

**TOTAL DISALLOWANCE** $959.07

4.

| Date | Individual | Description | Disallowance |
|------|-----------|-------------|--------------|
| 08/22/88 | JGB | Miscellaneous | $ 5.00 |
| 08/26/88 | JGB | Miscellaneous | $ 5.00 |
| 09/16/88 | JGB | Miscellaneous | $ 1.00 |
| 09/16/88 | JGB | Miscellaneous | $ 5.00 |
| 09/28/88 | JGB | Miscellaneous | $ 5.00 |

**TOTAL DISALLOWANCE** $21.00