**In the Matter of SAYBROOK MANUFACTURING CO., INC., Debtor.**

**In the Matter of CLINTON MARINE PRODUCTS, INC., Debtor.**

**In the Matter of SERO HOLDINGS, INC., Debtor.**

**In the Matter of The SERO COMPANY, a/k/a Sero of New Haven, a/k/a Ms. Sero, a/k/a Par–Ex, a/k/a Wrecked, a/k/a Scoundrel, a/k/a Jennifer Kirk, a/k/a C.J. Taft, Debtor.**

Bankruptcy Nos. 88–52607, 88–52608, 88–52609 and 88–52610.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Dec. 5, 1989.

Wesley J. Boyer, Macon, Ga., for debtors.

Matthew D. Williams, Atlanta, Ga., for Fulcrum Intern. Ltd.

Lee Brooks, Atlanta, Ga., for Manufacturers Hanover Trust Co., Manufacturers Hanover Bank (Delaware), and Union Trust Co.

Mark Roadarmel, Staff Atty., Macon, Ga., for U.S. Trustee.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Fulcrum International Ltd. (Fulcrum) filed an application for employment as a professional nunc pro tunc on October 19, 1989. Fulcrum seeks allowance of compensation and reimbursement of expenses. Saybrook Manufacturing Co., Inc., Clinton Marine Products, Inc., Sero Holding, Inc., and The Sero Company (collectively "Debtors") filed an objection to the application on November 2, 1989. Manufacturers Hanover Bank (Delaware), Manufacturers Hanover Trust Company, and Union Trust Company (collectively "Manufacturers Hanover") filed an objection on November 3, 1989. A hearing was held on November 8, 1989.

The Sero Company (Sero) is a clothing manufacturer which was facing financial difficulty in the fall and winter of 1988. Fulcrum is an investment and merchant banking firm. Sero and Fulcrum entered into an agreement on December 12, 1988, in which Sero agreed to pay Fulcrum eight percent of the principal amount of any equity investment arranged by Fulcrum. Sero also agreed to reimburse Fulcrum for reasonable expenses.

Debtors filed petitions under Chapter 11 of the Bankruptcy Code on December 22, 1988. Fulcrum continued to seek funding for Sero postpetition. Fulcrum failed to apply for required court approval for postpetition professional services rendered on behalf of Sero until October 19, 1989. Fulcrum contends that it has no prior bankruptcy experience and was not aware of the need for court approval. Fulcrum contends that it relied upon Sero to handle all "technical matters" relating to the Bankruptcy Court. Fulcrum contends that its postpetition services were conducted with the knowledge of Sero's primary secured creditor, Manufacturers Hanover.

Fulcrum contends that it contacted several potential investors about an equity investment in Sero. However, all serious investors indicated that they were only interested in purchasing Sero's assets.

Fulcrum introduced Brynwood Partners II L.P. (Brynwood) to Sero. Brynwood is an investment limited partnership which makes equity investments in public and private companies. Brynwood demonstrated, by affidavit, that it would not have been aware of the Sero opportunity but for the efforts of Fulcrum. Brynwood had numerous meetings and telephone calls with Fulcrum concerning the Sero opportunity. Brynwood understood that an employment agreement existed between Fulcrum and Sero.

On June 30, 1989, this Court entered an order approving the sale of certain of Sero's assets and assignment of leases and executory contracts to Brynwood for $3,775,000. Fulcrum contends that it is entitled to eight percent of this sale price under its agreement with Sero.

Debtors object to Fulcrum's application on three grounds. First, Debtors contend Fulcrum has no contractual right to the compensation sought. Debtors note that the agreement provides that Fulcrum would receive an eight percent commission on equity investment. Debtors contend that Fulcrum failed to obtain any equity investment for Sero.

Second, Debtors note that Fulcrum failed to obtain court approval for its employment prior to rendering professional services to Sero. Debtors contend that Fulcrum has failed to show exceptional circumstances which warrant nunc pro tunc application.

Finally, Debtors contend that the $302,-000 in compensation which Fulcrum seeks is excessive. Debtors contend that, should the Court award any compensation to Fulcrum, Fulcrum is entitled only to the reasonable value of services rendered. Debtors argue that 51.3 hours of the total 162 hours itemized in Fulcrum's application for compensation were prepetition hours. Debtors argue that forty-five hours are a block estimate with no supporting entries. Debtors argue that only 60.1 of the hours itemized are potentially compensable. Debtors claim this 60.1 hours of compensable hours amounts to an hourly rate of $5,024.96, which is excessive.

Manufacturers Hanover objects on the same grounds as Debtors. In addition, Manufacturers Hanover contends that the fees and expenses sought are not budgeted items provided for in the conditional consent order by this Court. Manufacturers Hanover also contends that it has not consented or agreed to any assessment of its collateral for the payment of the fees and expenses which Fulcrum seeks.

■ The Court must first consider whether it is appropriate to grant Fulcrum's application for employment as a professional nunc pro tunc. Sections 327(a) and 1107(a) of the Bankruptcy Code[1] authorize Debtors, with the Court's approval, to employ professional persons. It is clear that employment of a professional person,[2] as authorized by section 327, must be with court approval.

In *In re Camp Lightweight, Inc.*,[3] this Court stated:

The court of appeals in *In re Arkansas Co.* [, 798 F.2d 645 (C.A.3 1986),] stated that the requirement of prior approval of employment ensures " 'that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same.' " 798 F.2d at 648 (quoting *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203, 205 (3rd Cir.), *cert. denied*, 396 U.S. 823, 90 S.Ct. 66, 76, 24 L.Ed.2d 74 (1969)).... The court of appeals, therefore, held that "retroactive approval of appointment of a professional may be granted by the bankruptcy court in its discretion but that it should grant such approval only under *extraordinary circumstances.*" *Id.* at 650 (emphasis added).

The Court agrees with the reasoning set forth by the Third Circuit Court of Appeals, and likewise holds that nunc pro tunc orders for retroactive approval should be entered only if counsel can demonstrate extraordinary circumstances warranting such action.... Mere

**1.** 11 U.S.C.A. § 327(a) (West 1979); 11 U.S.C.A. § 1107(a) (West Supp.1989). Section 327(a) provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C.A. § 327(a) (West 1979).

Section 1107(a) provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and

powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter. 11 U.S.C.A. § 1107(a) (West Supp.1989).

**2.** Persons who offer services normally performed by professionals, such as appraisers or management consultants, are designated as professionals. In determining whether a person is a professional, courts consider not only the nature of the services provided, but also the effect of such services upon the administration of the bankruptcy case, and how central that role is to the reorganization proceeding. *In re Aladdin Petroleum Co.*, 85 B.R. 738, 740 (Bankr.W.D.Tex. 1988).

**3.** 76 B.R. 855 (Bankr.M.D.Ga.1987).

oversight of counsel is not an extraordinary circumstance for failing to comply with the requirements of the law. *See, e.g., In re Arkansas Co.*, 798 F.2d at 650. 76 B.R. at 856–57.

Fulcrum contends that it was not familiar with bankruptcy procedures and did not know that court approval of its services was required until June 1989. Fulcrum contends that it relied upon Sero to handle "technical matters" with the bankruptcy court. Apparently Fulcrum failed to seek the advice of counsel until after virtually all of its services to Sero had been rendered. Fulcrum contends that Manufacturers Hanover knew that it was providing postpetition services to Sero. It contends that, but for its services, the sale of assets to Brynwood would not have taken place. Finally, Fulcrum contends that it was ignorant of the requirement for court approval.

It has been a long-standing principle of jurisprudence that ignorance of the law is no excuse. *United States v. International Minerals & Chemicals Corp.*, 402 U.S. 558, 561, 91 S.Ct. 1697, 1699, 29 L.Ed.2d 178 (1971); *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 884 (3rd Cir.1987).

Hard cases, however, can make bad law. *Michigan v. Jackson*, 475 U.S. 625, 637, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). In *Fanelli v. Hensley (In re Triangle Chemicals)*,[4] the United States Court of Appeals for the Fifth Circuit stated:

> [T]he bankruptcy court retains equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval nunc pro tunc, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefited the debtor's estate and, consequently, its creditors.

697 F.2d at 1289.

The Court is persuaded that Fulcrum relied upon Sero to handle "technical matters" with the bankruptcy court. Fulcrum contends that Manufacturers Hanover knew that it was providing services to Sero. Manufacturers Hanover does not deny this contention. Fulcrum's services substantially benefited Debtors and their creditors. The Court notes the following statements from Collier concerning nunc pro tunc applications:

> Just what circumstances will qualify as sufficiently extraordinary to warrant a retroactive order approving retention has generated split authority. Attempts have been made to identify standard factors to be considered in making such determination. One significant factor is whether the application for employment would otherwise have been approved if timely filed. Hardship to the applicant caused by another party's inaction is another basis upon which several courts have granted retroactive employment applications provided that prior approval would have been appropriate and the delay in seeking approval was due to circumstances beyond the applicant's control. *A common factor in such cases is the applicant's justifiable reliance on another party to prepare the employment application.*

2 *Collier on Bankruptcy* ¶ 327.02 [15th ed. 1989] (emphasis added).

The Court is persuaded that Fulcrum has shown extraordinary circumstances and will therefore approve Fulcrum's application for employment nunc pro tunc.

■ The Court will now consider the proper amount of compensation which Fulcrum is entitled to receive. Section 330(a) of the Bankruptcy Code[5] requires

> (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title; and

---

**4.** 697 F.2d 1280 (5th Cir.1983).

**5.** 11 U.S.C.A. § 330(a) (West Supp.1989). This section provides:

> (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

that professional persons applying for fees and expenses demonstrate that their services were actual, necessary, and reasonable. Section 328(a) of the Bankruptcy Code [6] allows a court to authorize employment on reasonable terms, including on an hourly basis and a contingent fee basis. Bankruptcy Rule 2016(a) [7] requires that an entity seeking compensation for services and reimbursement of expenses file an application disclosing the services rendered, time expended, expenses incurred, and the amounts requested. The applicant bears the burden of proof as to entitlement and reasonableness of fees and expenses. *In re Harman Supermarket, Inc.*, 44 B.R. 918, 920 (Bankr.W.D.Va.1984); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 429 (Bankr.D.Alaska 1984). *See also Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988) (attorney fee applicant bears burden of establishing entitlement and documenting appropriate rates).

Fulcrum contends that investment bankers do not customarily charge for services on an hourly basis. Therefore, it did not keep time records as services were provided. Debtors and Manufacturers Hanover do not dispute this contention. The Court is persuaded that Fulcrum's contention is correct.

 Fulcrum urges the Court to award it the contingency fee provided for in its prepetition agreement with Sero. Simply stated, Fulcrum contends that it is entitled to $302,000 (i.e. eight percent contingency fee of $3,775,000 sale price). The plain language of the agreement, however, provides that Sero agreed to pay eight percent of the principal amount of any equity investment arranged by Fulcrum. Fulcrum failed to arrange any equity investment. The Court, therefore, declines to award Fulcrum the amount it has requested.

Section 330(a) directs the Court to compensate professionals for the actual and necessary services rendered to the estate based on factors such as the time, nature and value of the services, and the cost of comparable services other than in cases under the Bankruptcy Code. In this particular case, the value of the services rendered is reflected through the efforts of Fulcrum introducing Brynwood to Sero. In addition, the Court notes that Fulcrum helped keep the "fires hot," which resulted in a sale of Sero's assets.

---

(2) reimbursement of actual, necessary expenses.

11 U.S.C.A. § 330(a) (West Supp.1989).

**6.** 11 U.S.C.A. § 328(a) (West Supp.1989). This section provides:

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C.A. § 328(a) (West Supp.1989).

**7.** R. Bankr.P. 2016(a). This section provides:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

R.Bankr.P. 2016(a).

Fulcrum contends that it spent 162 hours working for Sero. The Court notes that much of this time was spent prepetition and is not compensable under sections 327 or 328. In addition, a block of forty-five hours is simply an estimate without documentation.

Fulcrum's application also shows it spent fifty-one hours preparing its application for compensation. The Court is of the opinion that most of this time would not have been spent had Fulcrum properly sought court approval for its professional services.

A bankruptcy estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought. *In re Chas. A. Stevens & Co.*, 105 B.R. 866 (Bankr.N.Ill.1989).

When documentation is inadequate, the court is not relieved of its obligation to award a reasonable fee, but has the power to make such an award without the need of further evidentiary hearings. *Norman v. Housing Authority of Montgomery*, 836 F.2d at 1303.

The Court has considered the value of the services which Fulcrum rendered to Debtors and is of the opinion that Fulcrum is entitled to reasonable compensation in the amount of $75,000 for services rendered to the estate. The Court notes that this amount is about two percent of the sale price.

The Court finds that Fulcrum has documented and is entitled to reasonable expenses of $296.31. The Court denies Fulcrum's request for $890.30 in expenses incurred during the preparation of its application for employment. The Court notes that most of these expenses would not have been incurred if court approval of its employment had been requested at the proper time.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the objection filed on the 2nd day of November, 1989, by Saybrook Manufacturing Co., Inc., Clinton Marine Products, Inc., Sero Holding, Inc., and The Sero Company to the "Application by Fulcrum International Ltd. for Employment as a Professional, Nunc Pro Tunc, and for Allowance of Compensation and Reimbursement of Expenses" (application for employment nunc pro tunc) filed on the 19th day of October, 1989, hereby is overruled; and it is further

ORDERED that the objection filed on the 3rd day of November, 1989, by Manufacturers Hanover Bank (Delaware), Manufacturers Hanover Trust Company, and Union Trust Company to the application for employment nunc pro tunc hereby is overruled; and it is further

ORDERED that the application for employment nunc pro tunc hereby is granted; and it is further

ORDERED that Fulcrum International Ltd. hereby is allowed reasonable compensation in the amount of $75,000 for services rendered to the estate; and it is further

ORDERED that Fulcrum International Ltd. hereby is allowed reimbursement of reasonable expenses in the amount of $296.31; and it is further

ORDERED that this order be entered on the docket on the date set out below.

SO ORDERED.