**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**Bankruptcy Nos. 89–9714–8P1 through 89–9746–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 26, 1991.

See also 123 B.R. 1018.

Don Stichter, Tampa, Fla., and Michael Crames, New York City, for debtors.

Paul O'Hearn and Marc Kirschner, New York City, and Zala Forizs, St. Petersburg, Fla., for creditors committee.

Daniel Golden, New York City, and John Genovese, Miami, Fla., for bondholders committee.

Lynn England, Tampa, Fla., U.S. Trustee.

## ORDER ON FIRST APPLICATION FOR INTERIM ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR BEAR STERNS CO., INC.

ALEXANDER L. PASKAY, Chief Judge.

THIS is a yet-to-be confirmed Chapter 11 case involving Hillsborough Holdings Corporation (HHC) and its subsidiaries (the Debtors). The matter under consideration is a First Application of Bear Sterns Co., Inc. (Bear Sterns) for Interim Allowance of Compensation for services rendered during the period of May 1, 1990 through July 31, 1990, or a three-month period. Bear Sterns also seeks a reimbursement of expenses claimed to have been incurred by it during the time period mentioned. The Application for allowance is submitted pursuant to an Order entered by this Court approving the employment of Bear Sterns as financial advisors to the Official Committee of Bondholders (Committee). The Amended Order approving the employment was entered on August 7, 1990, and authorized the employment of Bear Sterns nunc pro tunc as of May 10, 1990. This Order authorized the Debtors to pay Bear Sterns a monthly fee of $150,000.00 for the month of May 1990 and further provided that at the conclusion of each of the months of June and July, Bear Sterns may file an interim monthly fee application reasonably describing the financial advisory services rendered and the amount of compensation and expenses requested and that payment to Bear Sterns shall be subject to review by this Court upon the submission by Bear Sterns of a final application pursuant to § 330 of the Bankruptcy Code.

The present Application under consideration fails to set forth any time records, thus, it is impossible to determine the amount of time spent by Bear Sterns in rendering the services described in the Application and only gives a summary of the services rendered which sets forth the following:

During the month of May according to the Application, Bear Sterns developed a framework within which the Committee would enhance its understanding of HHC's business and "associated values." The service basically was limited to reviewing public documents and some other information provided by the Debtor and the Committee and its professionals. In this connection, it should be noted that not only do the Debtors have their own accounting firm, Price Waterhouse, but the Official Committee for Unsecured Creditors was also authorized to employ its accountants, the firm of Arthur Anderson Co. In addition, the Bondholders

Committee was also authorized to employ its own accountants, the firm of Ernst & Young. Thus, three of the remaining firms out of the original "Big Eight" accounting firms are actively involved in this case and, of course, they also seek substantial fees for their services.

Throughout the Application, it is emphasized by Bear Sterns that they initiated "due diligence process"—whatever "due diligence process" means, and whether or not this due diligence process took two hours or 1000 hours to perform is unclear to say the least. One of the initial "due diligence processes," according to the Application, involved the evaluation of HHC as a parent of each of its subsidiaries and involved on-site meetings with the management and professionals of these entities. During the time period, the professionals of Bear Sterns visited J.W. Homes in Tampa, which involved a two-day stay on May 15 and May 16, 1990, and U.S. Pipe and Foundry Co., Inc., in Alabama on May 21, or a total of three days. Lastly, according to the Application, Bear Sterns reviewed the sale of the Soil Pipe Division and Southeastern Assembly Division of the overall business operations of U.S. Pipe.

According to the summary submitted, the services rendered by Bear Sterns during the month of June were a continuation of the "due diligence process," again directed toward the overall assessment of values. This involved a visit on June 7, 1990, to Sloss Industries in Birmingham by two professionals and one visit to J.W. Resources, again involving the two professionals. As part of the ongoing "due diligence process," one professional analyzed ten distinct industries in which some of the Debtor entities were involved for the purpose of assessing the evaluation of these companies in the market place. The Application indicates that Bear Sterns also identified and reviewed the validity of economic industrial related material (sic) to provide a framework in which to perform evaluation analysis, whatever this means.

During the month of July, Bear Sterns provided the Committee with a critique of the management's business plan. In this connection, it should be pointed out that this Court is not aware of any business management plan of the Debtors, let alone of any Plan of Reorganization which is yet to be filed.

The most puzzling services claimed to have been performed by Bear Sterns were described as follows:

C. *Other Chapter 11 Services: [sic]*

28. Bear Sterns' Restructuring professionals coordinated with the other Committee professionals in the preparation of the objection filed by the Committee to the extension of the Debtor's exclusive period.

(p. 15—Interim Fee Application)

This Court is utterly at a loss to understand how Bear Sterns "restructured professionals" and who were the professionals who were restructured. Most importantly, this Court cannot fathom what on earth Bear Sterns had to do with an objection filed by the Committee to the Debtor's request to extend the exclusive period. Bear Sterns also claims to have "reviewed Motions." Clearly a review of Motions is a legal service for which there was already an army of attorneys active in this case who could have more than adequately reviewed these Motions and advised the Committee of the merit of the Motions, and the Committee certainly did not need a high-powered investment banker to analyze and advise the attorney for the Committee, regarding the Motions. Equally, this Court is unable to comprehend why Bear Sterns was requested to or why it was necessary for Bear Sterns to analyze the structure of claims of creditors. Moreover, it is equally puzzling why Bear Sterns was needed to utilize high-powered, highly skilled lawyers and accountants to advise them of the real impact of collateralized mortgage transactions. There is no question that this record is thus far totally devoid of any tangible results produced by Bear Sterns which could be even guesstimated, let alone evaluated.

Bear Sterns seeks compensation for these services rendered by it during the three-month time period in the amount of $450,000.00, less the $150,000.00 which it

has already received. In addition, Bear Sterns seeks a reimbursement for expenses in the amount of $28,871.69. The Office of the United States Trustee filed an Objection to the Application For Allowance on the basis that the Application fails to document the time spent and, therefore, it is impossible to determine the true value of the services rendered. In response, counsel for the Bondholders urges that investment bankers do not customarily charge for their services on an hourly basis and, for this reason, they do not keep time records for services provided, *citing, Saybrook Mfg. Co., Inc.*, 108 B.R. 366 (Bkrtcy. M.D.Ga.1989).

This Court is not unaware that the world of investment banking is indeed a strange, but wonderful place where a large amount of money is spent, generally at the expense of debtors in Chapter 11. Nevertheless, this Court is satisfied that in the absence of a time record, it is almost impossible to determine the reasonable value of the services rendered. In *In the Matter of Baldwin–United Corp.*, 79 B.R. 321 (Bkrtcy.S. D.Ohio 1987), Shearson Lehman Brothers, Inc. (Shearson), sought an enhancement of its fees. The court noted that the firm kept no time records, and while its clients may very well have been satisfied with this type of arrangement, the arrangement clearly failed to comply with the fee guidelines of the court, especially with applicable case law and Bankruptcy Rule 2016(a). In *Baldwin–United*, Shearson actually produced tangible results in that it worked on the development of and ultimately furnished a proposal to the debtor to issue zero coupon bonds as part of its Plan of Reorganization, a concept which was never used in Chapter 11 before and which, without doubt, played a great role in achieving a consensual plan of reorganization.

In this instance, unlike in *Baldwin–United*, Bear Sterns, has yet to produce any cognizable and tangible results. These Debtors have yet to file their disclosure statements or plans, thus, it is impossible to tell whether all these interviews, allegedly conducted with management or with other professionals, produced any meaningful benefit to assist the Bondholders to formulate their position in these Chapter 11 cases. The reliance of counsel for the Bondholders on *Saybrook Mfg. Co., Inc., supra*, is misplaced for the simple reason that in *Saybrook*, the investment banking firm was heavily involved in the ultimate sale of assets of the debtor and, moreover, Fulcrum International, Ltd., stated the number of hours spent, albeit without documents. It also should be emphasized that the court in *Saybrook* noted that the bankruptcy estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered which have not produced a benefit commensurate with the fees sought. *In re Chas. A. Stevens & Co.*, 105 B.R. 866 (Bankr.N.Ill.1989).

The matter of applications for allowance to investment bankers was recently considered by the Bankruptcy Court in the case of *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr.C.D.Cal.1991). In *Mortgage & Realty Trust*, Judge Bufford held that before investment advisers retained are entitled to compensation, the investment advisers must keep time records for each professional employed who performed services in the case, and the application must include the date and description of the services performed and the amount of time spent (in billing increments of tenths of an hour or less). This Court is unable to find any authority supporting the proposition that investment advisors are not subject to the mandate of Bankruptcy Rule 2016(a), which requires that any entity seeking compensation shall file an application setting forth a detailed statement of services rendered, time expended, and expenses incurred. While this Rule may not please the community of investment advisors, this Court is constrained to conclude that the Bankruptcy Rules are controlling, not the general policy or custom of the investment advisors which prevails in the operation of the business of investment bankers or advisors.

In light of the fact that unlike in *Saybrook*, this record is devoid of any record of the time spent nor any evidence of tangible results produced by Bear Sterns, this Court is satisfied that it is

appropriate to deny the Interim Fee Application in toto without prejudice and with leave granted to request a reconsideration of the application when the Debtors file their plans of reorganization, or at confirmation time, if there will be one, together with any other applications which may be filed by Bear Sterns for services rendered. Of course, when considering any application by Bear Sterns the Court will particularly evaluate not only the time actually spent, but the results achieved by Bear Sterns.

 This leaves for consideration the request for reimbursement and expenses sought by Bear Sterns in the total amount of $28,871.69. These expenses are identified as follows:

| | |
|---|---|
| Office Services | $15,301.19 |
| Meals | 276.95 |
| Miscellaneous | 11.75 |
| Travel | 9,419.50 |
| Hotels | 1,365.10 |
| Ground transportation | 344.55 |
| Car service | 2,152.65 |

The travel expenses, according to the Application, were incurred by Mark Lee, James Haft, and Brian Zeve. The Bear Sterns professionals visited Tampa, South Carolina and Alabama. According to the Application, the expenses of travel for these four professionals for one trip to Tampa, one trip to South Carolina, and three trips to Alabama is supposed to be $9,419.50. This Court is unable to comprehend how these professionals could incur airline travel expenses to the locations indicated at that cost unless they flew on a chartered Lear jet, except during Super Bowl.

The out-of-state stay of these professionals involved possibly five overnight stays in hotels. The amount sought is $1,365.10, or more than $200.00 per night for the five professionals. This Court is unaware of any hotel room in Tampa which charges $200.00 per night and doubts very seriously that these charges are prevalent in either South Carolina or in Alabama. The other item indicated to be car services is in the amount of $1,252.65. Whether or not that involves tune-up of automobiles or general repairs or replacement of tires or utilization of some automobile service is unclear, especially since a separate item for ground transportation seeks $344.55. As noted earlier, this deluxe service might be very well appropriate for the Bondholders Committee if they care to pay for it, but is certainly unacceptable to this Court and these expenses will not be allowed in any amount. Additionally, concerning expenses for office services, meals, miscellaneous, and car service are disallowed, as are telephone and hotel expenses, unless they are documented by invoices and bills.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the First Interim Fee Application of Bear Sterns be, and the same is hereby, disapproved without prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the request for reimbursable expenses is disapproved denied in part, and ruling is deferred on the balance pending documentation of the expenses incurred.

DONE AND ORDERED.