In re CROWN ORTHODONTIC DENTAL GROUP, a California corporation, Debtor.

In re CROWN DENTAL GROUP, a California corporation, Debtor.

In re RAMSTONE MANAGEMENT CO., INC., a California corporation, Debtor.

Bankruptcy Nos. SA 91–30741 JR to SA 91–30743 JR.

United States Bankruptcy Court, C.D. California.

Sept. 16, 1993.

**6.** *Id.*

**7.** *Gurs*, 27 B.R. at 165.

John H. Baker, Barclay Law Corp., Newport Beach, CA, for debtors.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

### INTRODUCTION

On April 15, 1993, Barclay Law Corporation ("Movant"), appeared before this court for approval of Movant's third interim fee application of $28,882. I treated Movant's third interim fee application as a final fee application and set Movant's final fee award at $30,500. On May 12, 1993, Movant filed a motion for reconsideration of the final fee award. After a hearing on June 21, 1993, I took Movant's motion for reconsideration under submission to examine whether an estimate that an attorney gives to a prospective client should be binding in a final fee award and to ensure that, given the facts surrounding this particular bankruptcy case, $30,500 represents a reasonable fee for Movant's services.

### JURISDICTION

This court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(a) (1991) (the district courts shall have original and exclusive jurisdiction of all cases under title 11), 28 U.S.C. § 157(a) (1991) (authorizing the district courts to refer all title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF FACTS

On May 28, 1992, this court entered an order approving Movant's employment application as general counsel for Ramstone Management Company, Inc., case number SA 91–30743 JR; Crown Dental Group, case number SA 91–30742 JR; and Crown Orthodontic Dental Group, case number SA 91–30741 JR ("Debtors"). On August 24, 1992, by this court's order, these three cases were substantively consolidated. Movant became general counsel for the consolidated Debtors.

On April 15, 1993, Movant appeared before this court for approval of its third interim fee application. Dr. Howard Stein, president of Ramstone, and Dr. Amin Ramo, vice president of Ramstone, opposed Movant's fee application. Stein and Ramo's primary objection stemmed from an oral estimate that Movant gave to Ramo on January 8, 1993, while the two were searching for a new attorney to handle their case.[1] Movant assured Stein and Ramo that, barring any unforeseen extenuating circumstances in the plan confirmation, it could handle the remaining bankruptcy proceedings and administration, including the plan of re-organization and confirmation, for $25,000 plus or minus $5,000.

Stein and Ramo were very cautious and concerned about the price of closing their case because their prior attorney had charged them three times more than his estimate before his employment was terminated. Ramo questioned the accuracy of Movant's estimate, and Movant continually assured Stein and Ramo that the $25,000 estimate was genuine and tenable.

Based on these findings of facts, at the August 15th hearing, I treated Movant's third interim fee application as a final fee application. I reduced Movant's fee award from the $77,569.29 requested to $30,500. This sum consisted of the $25,000 estimate Movant gave to Stein and Ramo, an additional $3,500 for Movant's work on the Vahed matter,[2] and $2,000 for unexpected difficulties in the plan confirmation that were not foreseeable by Movant prior to its handling of the case.[3]

On May 12, 1993, Movant filed with this court a motion for reconsideration of the fee application, claiming that the estimate given to Stein and Ramo is unenforceable.

On June 21, 1993, after a hearing on Movant's motion for reconsideration, I took this matter under submission to consider whether an estimate that an attorney conveys to a prospective client can be binding when the attorney applies for final approval of his bankruptcy fees and to ensure that, given the facts surrounding this particular bankruptcy case, $30,500 represents a reasonable sum for Movant's services.

## DISCUSSION

■ This court has an obligation to ensure that all fees that it approves are reasonable, justifiable, and equitable to all parties concerned. "Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees." *In re Chicago Lutheran Hospital Association,* 89 B.R. 719, 734 (Bankr.N.D.Ill.1988); *See also In re Gold Seal Products Co., Inc.,* 128 B.R. 822, 827 (Bankr.N.D.Ala.1991); *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re NRG Resources, Inc.,* 64 B.R. 643, 650 (W.D.La. 1986). The burden of proof to show entitlement to the fees requested is on the applicant. *Matter of U.S. Golf Corporation,* 639 F.2d 1197, 1201 (5th Cir.1981); *In re Beverly Manufacturing Corporation,* 841 F.2d 365, 369 (11th Cir.1988); *Pettibone,* 74 B.R. at 299. Pursuant to § 330 of the Bankruptcy Code (the "Code"), the applicant must show that the fees requested are necessary and reasonable. *See, e.g., In re Chas. A. Stevens & Company,* 105 B.R. 866 (Bankr.N.D.Ill.1989).

■ Considering the status of this case at the time Movant became employed and a

---

**1.** Stein and Ramo had recently dismissed their bankruptcy attorney and were looking for new counsel to get Debtors' plan of reorganization approved and the bankruptcy case closed.

**2.** The Vahed matter consisted of some bankruptcy litigation related to this proceeding. Movant requested $7,696 in fees for this matter. I divided this amount roughly in half and awarded Movant $3,500 for its work in this litigation because Movant never received permission from either Stein or Ramo to pursue this matter on behalf of Debtors. Rather, Movant erroneously relied on the consent of Mr. Stephen Schlesinger, the accountant for the estate.

**3.** The $2,000 fee award for unanticipated obstacles in the plan confirmation process reflects the amount that Mr. John H. Baker, Movant's representative, stated to the court on April 15, 1993 when estimating the additional fees resulting from unforeseeable circumstances that occurred in this case.

fee request more than *triple* the $25,000 estimate that Movant gave to Debtors, a total fee award of $77,569.25 appears on its face to be unreasonable and unfair. If an attorney estimates the cost of his or her services, and that estimate is a critical part of the negotiations which the client relies upon in employing the attorney, unless there are some real, unexpected changes of circumstances, the attorney should be bound by that estimate. A client should not have to pay three times what he expects to pay for legal representation without some justifiable reason. Movant did not provide good cause for the extensive overruns in this case.

By Movant's own admission, $2,000 represents a reasonable estimate of fees for the unforeseeable work in this case. The initial estimate of $25,000 was a reasonable sum for Movant's services given that the case was already in its final stages. Combining these two figures with the amount that I set for the Vahed litigation represents a reasonable sum for Movant's services.

After an extensive review of the relevant bankruptcy case law, I have found only one published case that examines professional's fees that significantly exceed the professional's estimate to the client. In *In re Chas A. Stevens & Company*, 105 B.R. 866 (Bankr.N.D.Ill.1989), Judge Squires confronted this disturbing issue while considering the excessive fees of a management consulting firm employed by the debtor. Judge Squires noted that:

> [a]lthough the court will not enslave professionals to the exact amount of their projected budgets, such forecasts must be given substantial weight when reviewing fee requests ... The court holds that when professionals, especially financial experts, project estimated fees or budgets to a client, they should expect to be held to the same or some reasonable variation thereof. For [the applicant] ... to apply to this Court after such enormous overruns and expect payment in full is unrealistic and *unreasonable.*

*Stevens*, 105 B.R. at 870 (emphasis added).

I do not believe in this decision that I am enslaving Movant to its projected budget.

Movant has been awarded its projection of a reasonable estimate for the work required in this case and an additional amount that its representative believed constituted the work on unexpected obstacles. Movant should be held accountable for its estimate that was relied upon by Debtors in retaining the services of Movant.

■ In its motion for reconsideration, Movant argues that "any purported contract between a debtor and professional is unenforceable." This is an incorrect view of the law. The Code does not prohibit a debtor and a professional from entering into an agreement with respect to fees. On the contrary, the Code only notes that the reasonableness and ultimate validity of any such agreement is subject to the bankruptcy court's approval. Code § 328(a) states that:

> The trustee [or *debtor in possession* pursuant to § 1107(a) ] ... with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, *on any reasonable terms and conditions of employment.* ... Notwithstanding such terms and conditions, *the court may allow compensation different from the compensation provided under such terms and conditions* after the conclusions of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (emphasis added).

Movant's reliance on *In re NBI, Inc.*, 129 B.R. 212, 225 (Bankr.D.Colo.1991) is misplaced. *NBI* dealt with the standards and practices to be observed in a debtor's selection of counsel. Judge Cordova examined the appropriateness of the debtor's choice of counsel. In approving the employment application with specific requirements as to compensation, *NBI* addressed the court's concern with "earned retainers" and "advance payments." *NBI* did not intend to

limit an attorney and client's ability to negotiate the scope of work expected, fee rates, and expected costs to the client.

■ Movant also argues in its motion for reconsideration that there is nothing in the application for employment and nothing in the order approving employment of debtor's counsel that says anything about an estimate, a budget or a limitation on fees. Movant, therefore, believes that the estimate of $25,000 cannot be considered a binding contract since it was never intended to be a binding contract and it was never approved by the bankruptcy court. The fact that Movant's estimate is not in its employment application is not a reason to excuse Movant from providing services consistent with its estimate. Federal Rules of Bankruptcy Procedure 2014(a) notes that the employment application shall "state ... *any* proposed arrangement for compensation...." Fed.R.Bankr.P. 2014(a) (emphasis added). "A negligent failure to disclose all facts required by Bankruptcy Rule 2014(a) does not relieve the professional of the consequences of failing to make a complete disclosure." *In re Hathaway Ranch Partnership*, 116 B.R. 208, 219–20 (Bankr. C.D.Cal.1990); *In re Rogers–Pyatt Shellac Company*, 51 F.2d 988, 992 (2d Cir.1931); *In re Michigan General Corporation*, 78 B.R. 479, 482 (Bankr.N.D.Tex.1987). Movant's representative readily admitted in court that he gave the estimate of $25,000 plus or minus $5,000 in response to Debtors' request knowing full well that Debtors had just had a very unpleasant experience with prior counsel over the issue of excessive charges. Movant's failure to disclose this information in its employment application does not relieve it from its responsibilities to abide by its commitment.

### CONCLUSION

Given the findings of fact that I reached in the prior hearings on this matter and in this memorandum opinion, Movant's motion for reconsideration of its final fee application is denied. Movant's final fee award is $30,500. Since Movant has already received $45,879.95 pursuant to interim applications, Movant shall return $15,379.95 to Debtors in compliance with this opinion. Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.