**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>STEVEN RAYMOND BANGHART and<br>BECKY JUNE BANGHART,<br>　　　　　　　Debtors. | BAP No. AZ-23-1049-LCF<br><br>Bk. No. 0:17-bk-13527-SHG |
| JIM D. SMITH,<br>　　　　　Appellant,<br>v.<br>UST-UNITED STATES TRUSTEE,<br>PHOENIX,<br>　　　　　Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Scott H. Gan, Bankruptcy Judge, Presiding

Before: LAFFERTY, CORBIT, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Jim D. Smith, trustee of the chapter 7[1] estate of Steven and Becky

Banghart, was employed at the outset of the case to serve as attorney for

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil

1

the estate with the approval of the bankruptcy court. Smith filed a fee application seeking $1,530 in attorney's fees which was approved as no objections were filed. Smith subsequently filed an application for trustee's commission for $847.80 to which the U.S. Trustee ("UST") objected on the basis that Smith was "double-dipping," i.e., seeking payment for the same tasks or activities twice. After an evidentiary hearing, the bankruptcy court reduced the previously approved attorney's fees to $210 but allowed the trustee's commission in full. Smith appealed the rulings. Seeing no error, we AFFIRM.[2]

## FACTS[3]

### A.    The bankruptcy case and Smith's activities

Steven and Becky Banghart filed their chapter 7 petition on November 14, 2017. Smith was appointed trustee. On December 27, 2017, Smith filed a two-page application to have himself appointed attorney for the estate. Concurrent with the application, Smith filed a one-page declaration which simply stated that he is a sole practitioner and had no conflicts. There being no objections, the application was approved.

---

Procedure.

[2] This appeal was concurrently heard with three others: (1) *Smith v. UST (In re Rivera)*, BAP No. AZ-23-1047-LCF; (2) *Smith v. UST (In re Figueroa)*, BAP No. AZ-23-1048-LCF; and (3) *Smith v. UST (In re Earle's Custom Wines, Inc.)*, BAP No. AZ-23-1050-LCF. These companion appeals are the subject of their own separate written decisions.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

The same day, Smith filed a one-page Trustee's Objection to Exempt Property. The objection stated that the Debtors' exemption on their 2007 Dodge Ram 3500 improperly exceeded the allowed amount of $12,000. The Debtors did not respond and the objection was sustained. Approximately a month later, Smith filed a Notice to Deliver Non-Exempt Asset requesting that the Debtors turn over their 2003 BMW 325Ci.

Thereafter, Smith settled with the Debtors, resolving the issues over both vehicles for a payment of $2,500 paid over one year. Smith's application for approval of the settlement was approved without objection.

The court clerk filed and served a Notice of Bar Date, and ultimately six proofs of claim were filed totaling $9,447.66.

B.   **The fee application**

On January 15, 2019, Smith filed a six-page Application for Allowance of Administrative Expense – and – Rule 2016 Disclosure (the "Trustee's Fee Application"). The Trustee's Fee Application sought fees of $1,530.00 for 5.1 hours of work at $300 per hour. The services were categorized as: 4.1 hours for the settlement negotiations and documentation with the Debtors; and 1.0 hours for preparation of the Trustee's Fee Application. Smith included a cursory explanation of the work but no declaration to support the application. As there were no objections, the Trustee's Fee Application was approved.

## C.   The Trustee Final Report

On June 5, 2019, Smith filed his Trustee Final Report ("TFR") and separately filed an Application for Compensation [and] Reimbursement of Expenses (the "Trustee's Commission Request"). The TFR disclosed that Smith had received Debtors' tax refunds of approximately $950 from the IRS, and that, at the time of filing the TFR, Smith held $3,311.21 in his trust account. The Trustee's Commission Request proposed that Smith pay himself $847.80 for trustee's commission, $30 for trustee's expenses, and $1,530 for his previously awarded attorney's fees. That left $903.41 for creditors.

The bankruptcy court docket indicates that the UST reviewed the TFR and Trustee's Commission Request and had no objections. But a few weeks later, the UST filed an objection to the Trustee's Commission Request. The objection asserted that since Smith "has already compensated himself as an attorney for the bankruptcy estate for performing chapter 7 trustee duties," further compensation should be denied. The objection noted that the UST was not aware that the fee application had been filed because its office was closed at that time. The objection also noted that it did not dispute that Smith had the right to the commission requested but argued that he was "double-dipping" because he was going to be paid attorney's fees for doing the same work. Smith did not respond to the objections.

On July 1, 2020, and again on August 26, 2021, the bankruptcy clerk filed a preprinted Memorandum to Case Trustee noting that there had been no activity in the case for more than one year and that "it is unclear as to whether this case is continuing to be administered or whether an appropriate final report should be filed and the case closed."

## D.     The hearings on Smith's TFR

Neither Smith nor the UST timely responded to either of the case memoranda; rather nine months after the second one was issued, the UST filed a "[r]equest for status hearing regarding Memorandum to Case Trustee and United States Trustee's Objection to Trustee's Application for Compensation and Reimbursement of Expenses." The request noted that there was no activity in this case and the TFR was pending. Thereafter, the bankruptcy court set a status hearing which was heard on August 4, 2022.[4]

At the hearing, Smith suggested that the bankruptcy court simply rule on the pleadings to date without further hearings, and the UST agreed. The court invited Smith to file a response to the UST's objection, but Smith demurred. The court then stated on the record that the matter was submitted.

On September 8, 2022, the bankruptcy court entered its order requiring simultaneous further responses from Smith and the UST and setting a further hearing. In its order, the court made tentative findings

---

[4] This was a combined hearing for all four of the cases for which the Panel heard argument on September 28, 2023.

including that one single entry in the fee application for "limited legal research" "**may be compensable for attorney's fees**, provided there is further explanation from Mr. Smith[,]" suggesting that the remainder of the time would be disallowed. (Emphasis added). The court invited Smith to respond to the UST objections as well as its tentative findings.

As to the UST, the court ordered the UST to file a reply "describing its procedure for identifying such violations when it reviews fee applications and whether it uses the same procedure and scrutiny to review fee applications by independent counsel as it does to review those by trustees also serving as attorneys for the estate."

Smith's response repeated his position that all of his billed time was for services "routinely performed" by attorneys employed by chapter 7 trustees. The response further complained that the UST was not objecting to the fees requested by trustee Lawrence Warfield's[5] attorney who "was paid over $800,000 in the Year 2021 . . . for representing Chapter 7 Case Trustees in cases where issues similar to this Case were made and litigated." Smith noted that his fee application had been approved by the court on February 12, 2019, i.e., more than three years ago.

The UST's response summarized its process for reviewing chapter 7 fee applications.

On November 1, 2022, the bankruptcy court conducted a second hearing and advised the parties that its review of the supplemental

---

[5] Apparently, the only other chapter 7 trustee in the Yuma, Arizona area.

responses left it with questions and further concerns directed at both parties. After lengthy colloquy between the court and the parties, the court invited the parties to file further supplemental pleadings regarding its specific concerns. The court requested "case law" from the parties that differentiated a trustee's efforts as trustee and those of trustee's counsel. The court stated that it wished to better understand the UST's position on that issue so that it could "more clearly set a standard . . . to apply across the board." As to Smith, the court asked him to "take a hard look" at his time entries as some appeared to be administrative overhead expense. Over Smith's objection, the court set an evidentiary hearing in December.

Subsequently, the UST filed a further memorandum which essentially repeated its earlier recitation of its procedures regarding fee applications. It attached numerous exhibits containing turnover motions filed by trustees without counsel, arguing that this type of turnover action is routinely done by trustees without counsel.

Smith filed a "Notice of Filing 'De-Lump' Time Entries as Required by 9/8/2022 Court Order." He also filed a list of thirty-four "recent" cases purporting to establish that "the Attorney for the Chapter 7 Trustee was compensated (without objection) for services which the U.S. Trustee now claims are services that must be provided by the Chapter 7 Trustee, not an Attorney." The list contained some details about each case and a "[d]escription of the work" but contained no analysis or statement by

Smith establishing a direct relationship between those cases and his case nor showing any relevance to the tasks Smith performed.

On December 20, 2022, the bankruptcy court conducted an evidentiary hearing at which Smith testified and was cross-examined. Smith testified that his request for fees was reasonable because, among other reasons, he limited his request to the settlement with the Debtors, and specifically to time spent negotiating the settlement and preparation of the settlement documents. On cross-examination, Smith stated that in his opinion, drafting a settlement agreement and related pleadings is "attorney work." The bankruptcy court inquired: "But again, you agree that you could have in your Trustee capacity filed that motion to approve settlement, correct?" Smith responded: "Absolutely, I could have done it." Smith stated in response to another question by the court: "Judge, I submit you understand the case. You can just do what you want."

The UST argued that a fee application remains "open" until the TFR is approved, also suggesting that the fees were approved on an interim basis and thus could be revisited but offered no authority for either proposition. The UST stated that it objected to the Trustee's Commission Request rather than the fee award only because it was more expedient to do that rather than object to the Trustee's Fee Application.

E.    **The bankruptcy court's rulings**

The bankruptcy court issued its Ruling on United States Trustee's Objection to Jim Smith's Trustee's Application on February 21, 2023 (the

"Memorandum"). The bankruptcy court first addressed the Trustee's Commission Request ruling that it was not appropriate to deny the commission provided to the trustee under § 326(a) on the basis that "Smith previously received attorney's fees." It next addressed the procedural concern that the fees in the Trustee's Fee Application had already been approved. The court stated that under Civil Rule 60(b), it would grant the UST relief from that approval because "closure of the UST's office during the time Mr. Smith filed his Attorney Application is 'excusable neglect' within [Civil] Rule 60(b)(1)."[6]

As to the merits, the court disallowed all the attorney fee time except for an entry in the amount of .7 hours which was attributable to the preparation of the fee application itself. As to each of the disallowed entries, the court stated that "[t]his time entry is not compensable for attorney's fees. Objection sustained," or "negotiating a settlement regarding turnover is a trustee duty." Further, on most of the entries, it noted that Smith did not "show what legal issues or services were involved."

The bankruptcy court concluded that the disallowed "services were neither reasonable nor necessary." It stated, "Smith . . . failed to demonstrate how any of those services performed involved legal expertise beyond the duties routinely performed by trustees without counsel

---

[6] As to the Civil Rule 60(c)(1) requirement that the request be made within one year, the court noted that the UST filed its objection a few months after entry of the order approving the Trustee's Fee Application which was within the one-year limit.

assistance." It further noted that the reduction "is warranted based on [the court's] review for reasonableness and necessity and the anticipated return to creditors in this case." It reduced the attorney's fees previously allowed from $1,530 to $210. It allowed the full amount of the Trustee's Commission Request of $847.80 and expenses of $30.

Smith timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in reducing the trustee's attorney's fee request from $1,530 in fees to $210?

## STANDARDS OF REVIEW

We review for abuse of discretion a bankruptcy court's order awarding compensation to an estate professional under § 330. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012). We will not disturb a bankruptcy court's award of attorney's fees "absent an abuse of discretion or an erroneous application of the law." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985); *see also Dawson v. Wash. Mut. Bank F.A. (In re Dawson)*, 390 F.3d 1139, 1145 (9th Cir. 2004).

Factual findings made in the course of awarding compensation are not disturbed unless clearly erroneous. *See Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 830 (9th Cir. 2000). A finding is

10

not "clearly erroneous" unless, based on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948).

We review for abuse of discretion decisions on relief from judgment under Civil Rule 60(b). *Flores v. Rosen,* 984 F.3d 720, 731 (9th Cir. 2020).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black),* 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

In his opening brief, Smith cites two specific issues to be resolved in this appeal: was the bankruptcy court "legally correct" in 1) vacating the approval of the attorney's fees application; and 2) "summarily reducing the preciously allowed Attorney's fees to $210?"[7]

There are reasons why a court of appeals defers to the trial court, especially when reviewing attorney's fee applications. Fundamentally, the Bankruptcy Code and cases interpreting § 330 make clear that the trial court has an independent obligation, whether a party objects or not, to review, critique, and reduce the fees requested if necessary, using the given standards; *see In re Crown Orthodontic Dental Grp.,* 159 B.R. 307, 309 (Bankr. C.D. Cal. 1993). *See also Law Offices of David A. Boone v. Derham-Burk (In re*

---

[7] Smith does not argue for reversal on the basis that the UST targeted him by objecting to his fee application while at the same time not objecting to similar fee applications by other trustees. That issue is therefore waived and not discussed herein. *Maloney v. T3Media, Inc.,* 853 F.3d 1004, 1019 (9th Cir. 2017) (issue not argued in briefs is waived).

11

*Eliapo)*, 298 B.R. 392, 399 (9th Cir. BAP 2003) (stating that the court has "wide discretion in determining reasonable and necessary fees under § 330(a)[.]"), *aff'd in part, rev'd in part and remanded by* 468 F.3d 592 (9th Cir. 2006).[8]

The basis for the extremely deferential standard is that the bankruptcy court is uniquely in the best position to assess the amount of

---

[8] Section 330(a) states in relevant part:

(a) (1) [The bankruptcy court may award] –

(A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . . employed by [the trustee];

. . .

(2) The court may . . . award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) . . . the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

work done, its contribution to the administration of the estate, and its benefit to the stakeholders; and thus, to determine the appropriate amount of fees. *See Phillips v. Gilman (In re Gilman),* CC-18-1101-STaL, 2019 WL 3074607, at *4 (9th Cir. BAP July 12, 2019) ("It is uniquely the province of the bankruptcy court to determine the level of review and the basis for critique in fee review, and a reviewing court should defer as thoroughly to that decision by the bankruptcy court as it would to any other decision concerning reasonableness of fees[.]") (citations omitted), *aff'd,* 836 F. App'x 511 (9th Cir. 2020). The skill requisite to achieve those results may be much more obvious in mid-size or larger cases of some complexity than they may be in cases such as the one before this Panel where there is very little activity and the court simply does not have the same opportunity to assess the nature of the work or whether it was actually necessary.

These cases represent exactly that dilemma. While we do not suggest that in every small case the court should schedule a hearing to probe the necessity of employing counsel, neither do we accept the proposition that the court must rely on the general assertion by the trustee in the employment application regarding the need for attorney assistance as establishing that any particular services actually rendered required the expertise of counsel.

The Bankruptcy Code requires the trustee to do his or her own work; this requirement sometimes creates a tension in small cases like these between the work that should be done by the trustee and that which

13

genuinely requires the assistance of an attorney. Therefore, it is not surprising that the only meaningful review of the fees in small cases occurs at the end of the case, and may frequently be predicated on an objection, or the court's independent concern, that the services for which compensation is requested do not rise to the level of tasks for which the expertise of an attorney was required.

## A. The bankruptcy court did not abuse its discretion in granting Civil Rule 60(b) relief to the UST.

Civil Rule 60(b), made applicable to this matter by Rule 9024, permits a court to "relieve a party . . . from a final judgment, order or proceeding for [among other reasons] . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief."

The bankruptcy court specifically found excusable neglect justifying relief under Civil Rule 60(b)(1) because "closure of the UST's office during the time Mr. Smith filed his Attorney Application is 'excusable neglect' within Rule 60(b)(1)." The court's ruling under these circumstances was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.

## B. The bankruptcy court did not abuse its discretion in disallowing the requested compensation.

### 1. There was insufficient evidence to permit the bankruptcy court to find that the services were reasonable and necessary.

Section 330 requires that an applicant establish that the fees incurred were reasonable and necessary as the bankruptcy court correctly ruled.

14

Smith's application simply does not demonstrate adherence to that standard.

Smith's fee application contained no separate declaration ascribed under penalty of perjury supporting the proposition that the fees he incurred were reasonable and necessary under § 330. His sole explanation in the Trustee's Fee Application for the work is: "1) [t]his Case likely would have been a 'No Asset' case if the legal services had not been rendered. 2) Legal work to negotiate and obtain Court approval of a settlement to resolve the Bankruptcy Estate's interest in a 2007 Doge [sic] Ram 3500 Pickup and a 2003 BMW 325CI."

Smith's response to the UST objection contained his short declaration which simply concluded that "in [his] legal opinion," the services performed were "not duties which are required to be performed by a chapter 7 Trustee, and that these settlements are normally handled by an Attorney for the Bankruptcy Estate." His testimony at the evidentiary hearing was no more than that; a few conclusory comments about the work he did and his belief that he should be paid for it.

In his opening brief, Smith set forth fifteen time entries that are "specific examples of disallowance where the findings and conclusions are illogical, implausible and without support in the record." For these entries, Smith offers a cursory explanation that the tasks were a "component of the required documentation . . . ." That conclusory statement is woefully short of the sort of factual support necessary to establish that the requested fees

15

were reasonable and necessary. And identifying a task as related to a settlement does not remove it from the trustee's obligations.

The bankruptcy court's ruling does not leave us with a definite and firm conviction that a mistake has been committed.

**2. There was insufficient evidence to permit the bankruptcy court to find that the disallowed services required special expertise.**

The UST's main objection to the Trustee's Fee Application was that the services performed by Smith purportedly as the trustee's attorney were services which the trustee would generally undertake. Section 328(b)[9] unambiguously requires that the fees awarded to an attorney representing a trustee in a bankruptcy case **must not include any time** for "performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate."

Section 704 sets forth the trustee's duties which include collecting and reducing to money the property of the estate, investigating the financial affairs of the debtor, examining the proofs of claim with a view toward objecting to allowance, and preparing the trustee's final account. The role of counsel for the trustee is to perform those tasks that require

---

[9] Section 328(b) states in relevant part:

(b) If the court has authorized a trustee to serve as an attorney . . . for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney . . . only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate.

16

special expertise beyond that expected of an ordinary trustee. "Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties and only to the extent of matters requiring legal expertise." *See Ferrette & Slater v. U.S. Tr. (In re Garcia)*, 335 B.R. 717, 725 (9th Cir. BAP 2005) (quotation marks and citation omitted). Attorneys must therefore present sufficient evidence including billing records with enough detail to establish that the services rendered went beyond the scope of the trustee's statutory duties and involve unique difficulties. *Id.* at 727. The cryptic descriptions in the billing statements provoked the court's concern about Smith's dual role in this case. Even the bankruptcy court's entreaties to Smith before the evidentiary hearing did not prompt Smith to adequately explain why the tasks required attorney expertise. Smith's failure to do so prevented the court from making the required findings in Smith's favor.

There is nothing in the record that would support a finding that the time entries disallowed by the bankruptcy court required expertise beyond that expected of an ordinary trustee. It is not clear error to find that these and similar entries are efforts Congress intended to be undertaken by the trustee and compensated under § 326(a).

17

3. **Section 330 implicitly requires counsel to exercise billing discretion; therefore, the bankruptcy court properly considered the anticipated return to creditors standard when disallowing the time and fees.**

Beyond the literal language that the services must be reasonable and necessary to be compensable, "[p]rofessionals have an obligation to exercise billing judgment." *Lobel & Opera v. U.S. Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (9th Cir. BAP 1997). Having an attorney perform a task does not compel a finding that the fees were necessary per se, and we implicitly rely on the trustee to exercise appropriate discretion before burdening the estate, and in particular a small estate, with attorney's fees where the task might well have been performed by the trustee.

The "actual and necessary" prong of § 330(a)(1) requires the trustee to consider the potential for recovery and balance the effort required against the results that might be achieved. *See Unsec. Creditors' Comm. v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood, Inc.)*, 924 F.2d 955, 961 (9th Cir. 1991) ("Absent unusual circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery.").

Smith offered no explanation as to why having an attorney do the paperwork for a settlement was required to monetize what was obviously going to be a simple and nominal recovery for the estate. Smith offered no evidence that he considered the potential for recovery and did any balancing assessment before incurring attorney's fees. That was his burden, and we cannot second guess the bankruptcy court's finding that the

expertise of an attorney was not necessary. Smith's blind insistence that it was compensable professional time because he said so is not sufficient to satisfy the requirements of the Bankruptcy Code.

## CONCLUSION

For these reasons set forth above, we AFFIRM.