
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PEDRO FIGUEROA and FLOR M. FIGUEROA,<br>                Debtors. | BAP No. AZ-23-1048-LCF<br><br>Bk. No. 0:17-bk-08550-SHG |
| JIM D. SMITH,<br>                Appellant,<br>v.<br>UST-UNITED STATES TRUSTEE,<br>PHOENIX,<br>                Appellee. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Scott H. Gan, Bankruptcy Judge, Presiding

Before: LAFFERTY, CORBIT, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Jim D. Smith, trustee of the chapter 7[1] estate of Pedro and Flor M.

Figueroa, was employed to serve as attorney for the estate with the

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil

approval of the bankruptcy court. After the case was reopened and an additional asset recovered, Smith filed a second fee application seeking an additional $1,982.50 in fees for his services as attorney for the estate after the reopening. Smith also filed a second Trustee's Final Report ("TFR") and an application requesting trustee's commission of $1,648.20 for the case. The request for commission as trustee further sought permission to pay himself $1,292.28 in unpaid attorney's fees owed from the initial fee application. Based on the U.S. Trustee's ("UST") opposition to the second fee application and the bankruptcy court's independent analysis of the requested fees, the bankruptcy court allowed the trustee's commission of $1,648.20, reduced the fees requested in the second fee application to $540, but did not permit Smith to pay himself the unpaid portion of the fees allowed in the first fee application. Smith appeals the rulings. Seeing no error, we AFFIRM.[2]

## FACTS[3]

### A.    The bankruptcy case and Smith's activities

Pedro and Flor M. Figueroa filed their chapter 7 petition on July 25, 2017. Smith was appointed trustee. Two months later, Smith filed a two-

Procedure.

[2] This appeal was concurrently heard with three others: (1) *Smith v. UST (In re Rivera)*, BAP No. AZ-23-1047-LCF; (2) *Smith v. UST (In re Banghart)*, BAP No. AZ-23-1049-LCF; and (3) *Smith v. UST (In re Earle's Custom Wines, Inc.)*, BAP No. AZ-23-1050-LCF. These companion appeals are the subject of their own separate written decisions.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

page application to have himself appointed attorney for the estate. Concurrent with the application, Smith filed a one-page declaration which simply stated that he is a sole practitioner and had no conflicts. There being no objections, the application was approved.

On October 12, 2017, Smith filed a three-page "Trustee's Complaint to Recover Preference" against State Farm Mutual Automobile Insurance Company ("State Farm"). The complaint asserted that State Farm had garnished $2,337.41 from Mr. Figueroa's wages within 90 days of the petition date and that the garnishment constituted a preference. When State Farm failed to respond, a default judgment was entered. At about the same time, State Farm paid Smith $1,636.19 which Smith, according to the TFR, apparently accepted as full payment, abandoning the remaining balance.

On October 26, 2017, Smith filed a two-page "Motion for Turnover of Non-Disclosed Estate Asset," specifically a "2003 Polaris ATV." The motion contained no declaration or other evidence to support the allegations. There being no objections, the motion was granted. The ATV was ultimately abandoned to the Debtors.[4]

On June 26, 2018, Smith received the Debtors' 2017 income tax refund totaling $2,110 from the IRS. He subsequently paid $335.44 to the Debtors for their portion of the refund which was approved by the court.

---

[4] The TFR identified the undisclosed ATV with a value of $25.

3

On February 13, 2019, Smith filed a two-page objection to State Farm's proof of claim, asserting that it was filed after the bar date and therefore should be subordinated to timely filed proofs of claim. State Farm did not respond, and the objection was sustained.

The court clerk filed and served a Notice of Bar Date, and ultimately three proofs of claim were filed totaling $26,240.27.

## B.    The fee applications and UST's objections

On December 4, 2019, Smith filed an eight-page "Application for Allowance of Administrative Expense – and – Rule 2016 Disclosure." The application sought fees of $4,980 for 16.6 hours of work at $300 per hour. The fee request pertained to the following categories: 8.9 hours for the State Farm matters; 3.4 hours for the ATV turnover activities; .8 hours for the preparation of the employment application documents; and 1.5 hours for the fee application. The 16.6 hours included an anticipated 2.0 hours for preparing for and attending a hearing on the application should there be objections to the fee request. Smith noted that if there were no objections, he would reduce the amount requested to $2,250. Again, Smith included no declaration to support the application.

The UST timely objected to the application, arguing that there was improper lumping of time in Smith's time entries and that Smith should not be paid for drafting and filing his own employment application. It also objected to Smith's proposed reduction in fees if there were no objections to the fee application, arguing that the adjustment was an attempt to

4

circumvent the Supreme Court's decision in *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 131 (2015), that an attorney may not be paid for efforts responding to objections to the application.

There was no further activity on the fee application until almost ten months later when Smith filed an amended fee application which sought fees of $4,350 for 14.5 hours at $300 per hour (the "Amended Fee Application"). The Amended Fee Application provided more detail in response to the UST's lumping objection and removed the request for fees to appear at a hearing should that become necessary. It reduced the time sought for the State Farm matters from 8.9 to 7.7 hours and the turnover motion from 3.4 to 3.0 hours. It increased the time for preparation of the employment application documents from .8 to .9 hours and the fee application from 1.5 to 2.0 hours. There was no explanation for the change in the total hours requested for compensation. The Amended Fee Application falsely stated that Smith had filed no "previous fee applications in this case."

The UST did not object to the Amended Fee Application. Smith thereafter filed a Certificate of No Objection which stated that he had "received no response nor opposition to the Application or Notice." Based thereon, an order was entered approving the Amended Fee Application allowing $4,350 as attorney's fees.

On December 21, 2020, Smith filed his Trustee Final Report (the "First TFR") which disclosed that the estate had $2,960.75 in funds on hand.

Smith proposed to pay himself that amount as a portion of the fees allowed in the Amended Fee Application. The court docket indicates that the UST reviewed the First TFR and had no objections. There was no separate application for trustee's commission.

The case was closed on March 4, 2021.

## C. Reopening the case and further activities

On August 11, 2021, Smith filed a one-page motion to reopen the case to recover a non-disclosed insurance refund. The motion was granted and Smith was reinstated as the trustee.

Two weeks later, Smith filed a two-page complaint against Wells Fargo Bank ("WFB") for turnover of $5,571.26 representing a "refund resulting from a pre-bankruptcy repossession of a vehicle." A month later, Smith and WFB "settled" for the full amount owed. Smith filed a two-page application for approval of the settlement which was approved 30 days later.

On October 25, 2021, Smith filed a further application for allowance of attorney's fees with respect to fees incurred since the case was reopened, seeking an additional $1,982.50 in fees and $23.85 in expenses (the "Second Fee Application"). The fees requested were categorized as: 1.5 hours of attorney time for preparing the fee application, .9 hours of "paraprofessional" time (at $125 per hour) for the fee application; 4.4 hours of attorney time for the WFB "litigation"; and .8 hours of paraprofessional time for the WFB "litigation." The Second Fee Application made no

6

disclosures concerning previously filed applications. The UST did not object to the Second Fee Application, and an order was entered approving the fees and expenses. On November 22, 2021, Smith paid himself $2,005.85 from the estate bank account.

On February 2, 2022, Smith filed an amended TFR (the "Second TFR") which included an accounting from the petition date. The Second TFR disclosed that after payment to himself of the fees and costs from the two fee applications, banking expenses and filing fees, there remained $2,933.29 in the estate account. Concurrently, Smith filed an "Application for Compensation and Reimbursement of Expenses" (the "Trustee Commission Request") which proposed that Smith use those funds to pay himself $1,648.20 in trustee's commission, $46.17 in trustee's expenses, and $1,292.28 as the remaining fees still owed from the Amended Fee Application. There would be no distribution to creditors. The court docket indicates that the UST reviewed the Second TFR the same day it was filed and had no objections.

Approximately three weeks later, the UST filed an objection to Smith's Trustee Commission Request. It recounted the events in the case and argued that Smith was improperly seeking compensation as an attorney for tasks that should have been completed by the trustee. It

7

requested that the court deny the "submitted TFR in its current form" and "deny the [Second Fee Application] in its entirety."[5]

## D. The hearings on the Second Fee Application and the Second TFR

The court held a hearing on the Second Fee Application, the Second TFR, and the Trustee's Commission Request on August 4, 2022.[6] At the hearing, Smith suggested to the bankruptcy court that it simply rule on the pleadings to date without further hearings, and the UST agreed. The court invited Smith to file a response to the UST's objection, but Smith demurred. The court then stated on the record that the matter was submitted.

On September 8, 2022, the bankruptcy court entered its order requiring simultaneous further responses from Smith and the UST and setting a further hearing on the fee application. In its order, the court made tentative findings including that five of the entries included in the two fee applications "**may be compensable for attorney's fees**, provided there is further explanation from Mr. Smith[,]" suggesting that the remainder of the time would be disallowed. (Emphasis added). The court invited Smith to respond to the UST objections as well as its tentative findings.

As to the UST, the court ordered the UST to file a reply "describing its procedure for identifying such violations when it reviews fee applications and whether it uses the same procedure and scrutiny to

[5] The objection made no comments about its previous approval of the Second Fee Application and the Second TFR or Civil Rule 60(b).

[6] This was a combined hearing for all four of the cases for which the Panel heard argument on September 28, 2023.

8

review fee applications by independent counsel as it does to review those by trustees also serving as attorneys for the estate."

Smith's response repeated his position that all of his billed time was for services "routinely performed" by attorneys employed by chapter 7 trustees. The response further complained that the UST was not objecting to the fees requested by trustee Lawrence Warfield's[7] attorney who "was paid over $800,000 in the Year 2021 . . . for representing Chapter 7 Case Trustees in cases where issues similar to this Case were made and litigated."

The UST's response summarized its process for reviewing chapter 7 fee applications.

On November 1, 2022, the bankruptcy court conducted a second hearing and advised the parties that its review of the supplemental responses left it with questions and further concerns directed at both parties. After lengthy colloquy between the court and the parties, the court invited the parties to file further supplemental pleadings regarding its specific concerns. The court requested "case law" from the parties that differentiated a trustee's efforts as trustee from those of trustee's counsel. The court stated that it wished to better understand the UST's position on that issue so that it could "more clearly set a standard . . . to apply across the board." As to Smith, the court asked him to "take a hard look" at his

---

[7] Apparently, the only other chapter 7 trustee in the Yuma, Arizona area.

time entries as some appeared to be administrative overhead expense. Over Smith's objection, the court set an evidentiary hearing in December.

Subsequently, the UST filed a further memorandum which essentially repeated its earlier statement of its procedures regarding fee applications. It attached numerous exhibits containing turnover motions filed by trustees without counsel arguing that this type of turnover action is routinely done by trustees without counsel.

Smith filed a "Notice of Filing 'De-Lump' Time Entries as Required by 9/8/2022 Court Order" in which he added additional detail to his time entries. He also filed a separate list of thirty-four "recent" cases purporting to establish that "the Attorney for the Chapter 7 Trustee was compensated (without objection) for services which the U.S. Trustee now claims are services that must be provided by the Chapter 7 Trustee, not an Attorney." The list contained some details about each case and a "[d]escription of the work" but contained no analysis or statement by Smith establishing a direct relationship between those cases and his case nor showing any relevance to the tasks Smith performed.

Smith also filed a Proof of Pre-Litigation Demands which contained copies of two short letters and two short emails from Smith to WFB, including WFB's letter to Smith advising him of the refund, and a subsequent WFB letter advising him that the refund had been mistakenly sent to the Debtors. All of the communications were dated prior to the filing of the motion to reopen the case.

On December 20, 2022, the bankruptcy court conducted an evidentiary hearing at which Smith testified and was cross-examined. Smith testified that he discovered the WFB refund several months before he reopened the case. He had demanded turnover of the refund, but WFB mistakenly turned it over to the Debtors, and thereafter, according to Smith, ignored his request for the funds. He explained that he had no choice but to reopen the case and file the adversary complaint.

E. **The bankruptcy court's ruling on the Second Fee Application and the Second TFR**

The bankruptcy court issued its Ruling on United States Trustee's Objection to Jim Smith's Attorney Fee Application on February 21, 2023 (the "Memorandum"). The bankruptcy court first addressed the Trustee Commission Request ruling that it was not appropriate to deny the commission provided to the trustee under § 326(a) on the basis that "Smith previously received attorney's fees." It next addressed the procedural concern that the fees in the Second Fee Application had already been approved. The court stated that under Civil Rule 60(b), it would grant the UST relief from that approval based on excusable neglect because a review of the application did not alert the UST to the fact that the requested fees would result in no distribution to creditors.[8]

---

[8] As to the Civil Rule 60(c)(1) requirement that the request be made within one year, the court noted that the UST filed its objection three months after entry of the order approving the Second Fee Application, which was within the one-year limit.

On the merits of the allowance of the Second Fee Application, the court disallowed all the line entries for the WFB litigation and allowed 1.8 hours or $540 to prepare the fee application. As to each of the disallowed entries, the court stated that "[t]his time entry is not compensable for attorney's fees. Objection sustained." As to the fee application, the court stated that the time was "compensable as attorneys for the estate routinely request compensation for preparing fee applications in this district."

The bankruptcy court specifically found that "Wells Fargo [was] responsive and compliant with Mr. Smith's requests." It concluded that the disallowed "services were neither reasonable nor necessary." It stated that "Smith . . . failed to demonstrate how any of those services performed involved legal expertise beyond the duties routinely performed by trustees without counsel assistance."

The court concluded that "[i]t is inconceivable that Mr. Smith seeks approval to pay himself compensation totaling $8,050.22 as both the Chapter 7 trustee and counsel to the chapter 7, because the total amount of net funds he recovered without any contested litigation was only $7,859.87." The court noted that even as reduced by the court's orders, Smith nonetheless earned a combined total of $5,178.95 of trustee's compensation under § 326(a) and attorney's fees compensation under § 330 for the case.

Smith timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in reducing Smith's attorney's fee request in the Second Fee Application from $1,982.50 to $540?

## STANDARDS OF REVIEW

We review for abuse of discretion a bankruptcy court's order awarding compensation to an estate professional under § 330. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012). We will not disturb a bankruptcy court's award of attorney's fees "absent an abuse of discretion or an erroneous application of the law." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985); *see also Dawson v. Wash. Mut. Bank F.A. (In re Dawson)*, 390 F.3d 1139, 1145 (9th Cir. 2004).

Factual findings made in the course of awarding compensation are not disturbed unless clearly erroneous. *See Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 830 (9th Cir. 2000). A finding is not "clearly erroneous" unless, based on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

We review for abuse of discretion decisions on relief from judgment under Civil Rule 60(b). *See Flores v. Rosen*, 984 F.3d 720, 731 (9th Cir. 2020) (citation omitted).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

In his opening brief, Smith cites two specific issues to be resolved in this appeal: 1) was the bankruptcy court "legally correct in vacating a previous Order Allowing Administrative Fee Allowance of $1,982"; and 2) did the bankruptcy court properly allow "only $540 for the legal services in the Wells Fargo Adversary Litigation[?]"[9]

There are reasons why a court of appeals defers to the trial court, especially when reviewing attorney's fee applications. Fundamentally, the Bankruptcy Code and cases interpreting § 330 make clear that the trial court has an independent obligation, whether a party objects or not, to review, critique, and reduce the fees requested if necessary, using the given standards. *See In re Crown Orthodontic Dental Grp.*, 159 B.R. 307, 309 (Bankr. C.D. Cal. 1993). *See also Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 298 B.R. 392, 402 (9th Cir. BAP 2003) (the court has "wide discretion in determining reasonable and necessary fees under § 330(a)"), *aff'd in part, rev'd in part and remanded by* 468 F.3d 592 (9th Cir. 2006).[10]

---

[9] Smith does not argue for reversal on the basis that the UST targeted him by objecting to his fee application while at the same time not objecting to similar fee applications by other trustees. That issue is therefore waived and not discussed herein. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017) (issue not argued in briefs is waived).

[10] Section 330(a) states in relevant part:

  (a)(1) [The bankruptcy court may award] –

The basis for the extremely deferential standard is that the bankruptcy court is uniquely in the best position to assess the amount of work done, its contribution to the administration of the estate, and its benefit to the stakeholders; and thus to determine the appropriate amount of fees. *See Phillips v. Gilman (In re Gilman),* CC-18-1101-STaL, 2019 WL 3074607, at *4 (9th Cir. BAP July 12, 2019) ("It is uniquely the province of the bankruptcy court to determine the level of review and the basis for

---

(A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . . employed by [the trustee];

. . .

(2) The court may . . . award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) . . . the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

critique in fee review, and a reviewing court should defer as thoroughly to that decision by the bankruptcy court as it would to any other decision concerning reasonableness of fees[.]") (citations omitted), *aff'd,* 836 F. App'x 511 (9th Cir. 2020). The skills requisite to achieve those results may be much more obvious in mid-size or larger cases of some complexity than they may be in cases such as the one before this Panel where there is very little activity and the court simply does not have the same opportunity to assess the nature of the work or whether it was actually necessary.

These cases represent exactly that dilemma. While we do not suggest that in every small case the court should schedule a hearing to probe the necessity of employing counsel, neither do we accept the proposition that the court must rely on the general assertion by the trustee in the employment application regarding the need for attorney assistance as establishing that any particular services actually rendered required the expertise of counsel.

The Bankruptcy Code requires the trustee to do his or her own work; this requirement sometimes creates a tension in small cases like these between the work that should be done by the trustee and that which genuinely requires the assistance of an attorney. Therefore, it is not surprising that the only meaningful review of the fees in small cases occurs at the end of the case and may frequently be predicated on an objection, or the court's independent concern, that the services for which compensation

16

is requested do not rise to the level of tasks for which the expertise of an attorney was required.

## A. The bankruptcy court did not abuse its discretion in granting Civil Rule 60(b) relief to the UST.

Civil Rule 60(b), made applicable to this matter by Rule 9024, permits a court to "relieve a party . . . from a final judgment, order or proceeding for [among other reasons] . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief."

The bankruptcy court specifically found excusable neglect justifying relief under Civil Rule 60(b)(1) because a review of the Second Fee Application did not alert the UST to the fact that the requested fees would result in no distribution to creditors. The court's ruling under these circumstances was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.

## B. The bankruptcy court did not abuse its discretion in disallowing the requested compensation.

### 1. There was insufficient evidence to permit the bankruptcy court to find that the services were reasonable and necessary.

Section 330 requires that an applicant establish that the fees incurred were reasonable and necessary as the bankruptcy court correctly ruled. Smith's application simply does not demonstrate adherence to that standard.

Smith's Second Fee Application contained no separate declaration ascribed under penalty of perjury or narrative in the application itself that

would support the proposition that the services rendered were reasonable and necessary within § 330. The single-sentence explanation in the fee application for the work is: "[t]hat the legal services rendered in this Case were required and benefitted the Estate including (but not limited to) the following: Legal work to prosecute and settle Adversary Litigation to recover the Bankruptcy Estate's interest in non-exempt Insurance Refund Claim."

Smith's response to the UST objection contained his short declaration which simply concluded that "in [his] legal opinion," the services performed were "not duties which are required to be performed by a chapter 7 Trustee[.]" His testimony at the evidentiary hearing was no more than that: a few conclusory comments of the work he did and his belief that he should be paid for it.

In his opening brief, Smith set forth nineteen time entries that are "specific examples of disallowance where the findings and conclusions are illogical, implausible and without support in the record." For these entries, Smith offers a cursory explanation:

> The Court's conclusion that the Wells Fargo Adversary Litigation was unnecessary is not supported by the record. During the eight (8) month period prior to filing the Wells Fargo Adversary Litigation, requests were made to Wells Fargo for payment. The Court documents evidence the dispute and the Court Ordered Proof of pre-litigation demands clearly show that there was a dispute.

That conclusory statement is woefully short of the sort of factual support necessary to establish that the requested fees were reasonable and necessary. And identifying a task as related to a dispute does not remove it from the trustee's obligations.

The bankruptcy court's ruling does not leave us with a definite and firm conviction that a mistake has been committed.

**2. There was insufficient evidence to permit the bankruptcy court to find that the disallowed services required special expertise.**

The UST's main objection to the fee application was that the services performed by Smith, purportedly as the trustee's attorney, were services which the trustee would generally undertake on his or her own. Section 328(b)[11] unambiguously requires that the fees awarded to an attorney representing a trustee in a bankruptcy case **must not include any time** for "performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate."

Section 704 sets forth the trustee's duties which include collecting and reducing to money the property of the estate, investigating the financial affairs of the debtor, examining the proofs of claim with a view

---

[11] Section 328(b) states in relevant part:

(b) If the court has authorized a trustee to serve as an attorney . . . for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney . . . only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate.

toward objecting to allowance, and preparing the trustee's final account. The role of counsel for the trustee is to perform those tasks that require special expertise beyond that expected of an ordinary trustee. "Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties and only to the extent of matters requiring legal expertise." *See Ferrette & Slater v. U.S. Tr. (In re Garcia)*, 335 B.R. 717, 725 (9th Cir. BAP 2005) (quotation marks and citation omitted). Attorneys must therefore present sufficient evidence including billing records with enough detail to establish that the services rendered went beyond the scope of the trustee's statutory duties and involve unique difficulties. *Id.* at 727. The cryptic descriptions in the billing statements provoked the court's concern about Smith's dual role in this case. Even the bankruptcy court's entreaties to Smith before the evidentiary hearing did not prompt Smith to adequately explain why the WFB related tasks required attorney expertise. Smith's failure to adequately explain the context of the time entries prevented the court from making the required findings in Smith's favor.

There is nothing in the record that would support a finding that the fees disallowed by the bankruptcy court were for services which required expertise beyond that expected of an ordinary trustee. It is not clear error to find that these and similar entries are efforts Congress intended to be undertaken by the trustee and compensated under § 326(a).

20

**3.** **Section 330 implicitly requires counsel to exercise billing discretion; therefore, the bankruptcy court properly considered the anticipated return to creditors standard when disallowing the time and fees.**

Beyond the literal language that the services must be reasonable and necessary to be compensable, "[p]rofessionals have an obligation to exercise billing judgment." *Lobel & Opera v. U.S. Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (9th Cir. BAP 1997). Having an attorney perform a task does not compel a finding that the fees were necessary per se, and we implicitly rely on the trustee to exercise appropriate discretion before burdening the estate, and in particular a small estate, with attorney's fees where the task might well have been performed by the trustee.

The "actual and necessary" prong of § 330(a)(1) requires the trustee to consider the potential for recovery and balance the effort required against the results that might be achieved. *See Unsec. Creditors' Comm. v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood, Inc.)*, 924 F.2d 955, 961 (9th Cir. 1991) ("Absent unusual circumstances, an attorney must scale his or her fee at least to the reasonably expected recovery.").

Smith offered no explanation as to why having an attorney do the paperwork for the WFB dispute was required to monetize what was going to be a simple and nominal recovery for the estate. Smith offered no evidence that he considered the potential for recovery or did any balancing assessment before incurring attorney's fees. That was his burden, and we cannot second guess the bankruptcy court's finding that the expertise of an

attorney was not necessary. Smith's blind insistence that it was compensable professional time because he said so is not sufficient to satisfy the requirements of the Bankruptcy Code.

## CONCLUSION

For these reasons set forth above, we AFFIRM.